**Law Offices of Isaac Nutovic**
261 Madison Avenue, 26th Floor
New York, New York 10016

**Hearing Date: March 7, 2025**
**Hearing Time: 10:30 a.m.**

*Proposed Counsel to debtor and debtor in possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

In re:                                                    Chapter 11

    1550 BEDFORD AVE LLC,                    Case No: 24-45433-ess

            Debtor.
---------------------------------------X

**NOTICE OF DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE (I) APPROVING BID PROCEDURES AND CERTAIN TERMS AND CONDITIONS OF SALE, (II) SCHEDULING AUCTION DATE, (III) APPROVING SALE AGREEMENT SUBJECT TO HIGHER OR BETTER OFFERS, (IV) <u>AUTHORIZING SALE OF REAL PROPERTY</u>**

    **PLEASE TAKE NOTICE**, that 1550 Bedford Ave LLC (the "<u>Debtor</u>") by its attorneys, Law Offices of Isaac Nutovic, shall move before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, New York 11201, in Courtroom 3585, or virtually by telephone or video, as the Court deems appropriate, on **March 7, 2025**, at 10:30 a.m. or as soon thereafter as counsel may be heard, for the entry of an Order Granting Debtor's Motion For An Order Pursuant To Sections 105(A) And 363 Of The Bankruptcy Code (I) Approving Bid Procedures And Certain Terms And Conditions Of Sale, (II) Scheduling Auction Date, (III) Approving Sale Agreement Subject To Higher Or Better Offers, (IV) Authorizing Sale Of Real Property (the "Motion").

    **PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the Motion must be in writing, conform with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, state with particularity the grounds therefor and be filed with the Bankruptcy Court no later than **February 28, 2025** as follows: (i) through the Court's CM/ECF system, which may be accessed through the

1

internet at the Court's website at https://www.nyeb.uscourts.gov/ and in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE,** that the hearing will be conducted by telephone, video or in person, as the Court deems appropriate. For remote hearings, whether telephonic or video, it is not necessary to contact the Courtroom Deputy to request prior authorization to appear remotely.

**PLEASE TAKE FURTHER NOTICE,** that whether the hearing is in person or remote, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and the party that you represent, if applicable. Please be sure to register at least two business days before your hearing. For remote hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called.

**PLEASE TAKE FURTHER NOTICE,** that if you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. In the event that you are not able to register online, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE,** that additional information about eCourt Appearances, including a tutorial on how to use the program, is available at

https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-

appearances.

Dated: February 17, 2025
        New York, New York

                                    **Law Offices of Isaac Nutovic**

                        By:    <u>*/s/ Isaac Nutovic*</u>
                               Isaac Nutovic, Esq.
                               261 Madison
                               Avenue, 26th Floor
                               New York, New York 10016

                               *Counsel to the Debtor*
                               *and Debtor in Possession*

**Law Offices of Isaac Nutovic**
261 Madison Avenue, 26th Floor
New York, N.Y. 10016
(917) 922-7963

*Proposed Counsel for the Debtor and Debtor-In-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In Re:                                                      Chapter 11

        1550 BEDFORD AVE LLC,                     Case no: 1-24-45433-ess

                        Debtor.
---------------------------------------------------------X

### DEBTOR' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE (I) APPROVING BID PROCEDURES AND CERTAIN TERMS AND CONDITIONS OF SALE, (II) SCHEDULING AUCTION DATE AND SALE HEARING DATE, (III) APPROVING SALE AGREEMENT SUBJECT TO HIGHER OR BETTER OFFERS, (IV) AUTHORIZING SALE OF REAL PROPERTY

**TO:    THE HONORABLE ELIZABETH S. STONG,
          UNITED STATES BANKRUPTCY JUDGE**

      1550 Bedford Ave LLC, the debtor and debtor-in-possession (the "Debtor") in this Chapter

11 case, by its counsel, the Law Offices of Isaac Nutovic, respectfully submits this motion seeking

the entry of an order pursuant to 11 U.S.C. §§ 105(a), 330 and 363, and Rules 2002 and 6004 of

the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"): (i) approving the proposed

bid procedures (the "Bid Procedures"), substantially in the form annexed hereto as **Exhibit A**; (ii)

scheduling an auction and sale hearing; and (iii) approving the form and manner of notice of the

auction and sale hearing, substantially in the form annexed hereto **Exhibit B**,  in connection with

the Debtor's sale of the property known as  1550 Bedford Avenue Brooklyn, New York (the

"Property"), as more fully detailed in the Motion; (iv) approving an Agreement of Sale (the "Sale

Agreement"), substantially in the form annexed hereto as **Exhibit C**, between the Debtor and

Mironova LLC (the "Stalking Horse Purchaser"), subject to higher and better offers as may emerge

after auction pursuant to the approved Bid Procedures (the "Purchaser"), "as is" and "where is", free and clear of all liens, claims, encumbrances, occupants, tenancies and rights of possession of any person and finding the Purchaser to be a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code (the "Sale") and (v) granting such other and further relief as this Court deems just and proper under the circumstances, and respectfully represents as follows:

## JURISDICTION AND VENUE.

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the Eastern District of New York, dated December 5, 2012 (Hon. Amon, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, and 363, and Bankruptcy Rules 2002, 6004, and 9014.

## BACKGROUND

2.  On December 31, 2024 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code.

3.  The Debtor is the fee simple owner of 1550 Bedford Avenue, Brooklyn, New York, a development property (the "Property").

4.  In connection with the acquisition and development of the Property, the Debtor took on mortgages of $10,000,000. These mortgages are currently held by DCP Bedford Graham LLC (the "Lender"). Because these mortgages went into default in 2019, the debt to the prepetition Lender has ballooned to over $45 million (including default interest) while the Property is estimated at no more than $14 million. The Debtor has no meaningful assets other than the Property.

5.   In 2018 the Debtor began developing the Property into a luxury hotel designed by a prominent architect. Around the time the pandemic began in 2020, with just a foundation completed, the Debtor ran out of funds and was unable to continue with the development. Yoel Goldman, the sole owner of the membership interests in the Debtor, was himself experiencing financial difficulties and was unable to raise the necessary funds. Many mechanics lien claims were filed against the Property and several lawsuits were commenced.

6.   The Debtor made a few proposals to the Lender to refinance or restructure its loan but ultimately was not able to move forward with any of them. The Debtor and the Lender have agreed to proceed together to auction sale of the Property within the contours of a Chapter 11 bankruptcy plan, carving out a distribution of $100,000 to unsecured creditors.

### SUMMARY OF RELIEF REQUESTED

7.   By this Motion, the Debtor seeks this Court's authority, pursuant to Section 363(f) of the Bankruptcy Code, to conduct an auction sale (the "Auction") of the Property, which is being sold in "as is" "where is" condition, free and clear of any liens, claims, encumbrances, occupants, tenancies and rights to possession of any person, other than the Permitted Exceptions (as defined in the Sale Agreement), subject to higher and better offers, with any such liens, claims, and encumbrances to attach to the net sale proceeds. The Debtor also seeks a finding by the Court that the Successful Bidder (as defined in the Bid Procedures) is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

8. To effectuate the Sale, the Debtor seeks entry of two separate orders. The first order sought (the "<u>Bid Procedures Order</u>"), will (i) approve the Bid Procedures and the terms and conditions of Sale, (ii) schedule the Auction (iii) approve the  terms of the Sale Agreement between the Debtor and the Stalking Horse Purchaser (including a 2.5% Breakup Fee), subject to higher and better offers as may emerge after auction pursuant to the approved Bid Procedures; and (iii) approve the form and manner of notice of the Auction and Sale Hearing. The second order is to be submitted at a hearing (the "<u>Sale Hearing</u>"), and generally seeks: (i) approval of the Sale of the Property to the bidder that submits the highest or best offer at Auction (the "<u>Successful Bidder</u>") (as defined in the Bid Procedures); and (ii) a finding by the Court that the Successful Bidder is a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

<u>**REQUESTED RELIEF**</u>

### I.    <u>Entry of the Bid Procedures Order</u>

**a.**   <u>The Bid Procedures</u>

9. The Debtor believes that the Bid Procedures, annexed hereto as <u>Exhibit A</u>, are the procedures most likely to maximize the value of the Property for the Debtor's estate, its creditors and other interested parties. Any person or entity (a "<u>Potential Bidder</u>") will be permitted to conduct due diligence and to inspect the Property prior to the Auction. The principal terms of the Bid Procedures, which are predicated on the agreement signed by the Stalking Horse Bidder to pay $10,000,000 for the Property, are outlined below.

    (A) Auction sale of the Property "as is" "where is" to be held on April 8, 2025 at 11 a.m.
    (B) Potential Bidders may, after review by the Debtor in consultation with its real estate advisors and the Lender, be "qualified" to participate in the bidding process if by 5:00 p.m.  April___, 2025, they provide (i) financial information

evidencing their ability to purchase the Property for no less than $10,500,000 (ii) a deposit of $525,000 with the Debtor, (iii) a signed form contract to purchase the Property without contingencies of any kind (whether financing or further due diligence) and (iv) a signed agreement to abide by all the terms of the Bid Procedures.

        (C) Any Bidder who becomes the Successful Bidder must increase its deposit to 10% of the final bid within three days of the Auction and close on the transaction within 45 days after the Auction or 30 days after entry of Bankruptcy Court order approving the Sale, with time being of the essence.

        (D) The second highest bid as determined by the Debtor becomes the Backup Bidder and is obligated to close within 20 business days of being notified that the Debtor is intending to close with the Backup Bid, with time being of the essence.

   b. <u>Proposed Notice of the Auction Sale and Bid Procedures And Marketing</u>

10. Upon entry of the Bid Procedures Order approving the Bid Procedures and the form of Notice of Auction and Sale Hearing, the Debtor shall cause those documents to be served by first class mail upon: (i) the Office of the United States Trustee; (ii) Counsel to the Stalking Horse Purchaser; (iii) counsel to the Lender (iv) all known creditors and parties in interest; (v) all parties having filed a notice of appearance and request for service of papers in the Debtor's case (vi) the Internal Revenue Service; (vii) New York State Department of Taxation and Finance; (viii) Corporation Counsel for the City of New York; (ix) Office of the United States Attorney; and (x) Office of the New York State Attorney General.

11. The Debtor submits that the foregoing notice is sufficient to provide effective notice of the relief requested in the Motion and of the Auction to all parties entitled to notice and potential Bidders in a manner designed to maximize the chance of obtaining the broadest possible participation in the Auction process while minimizing costs to the estate. Accordingly, the Debtor requests that the Court find this manner of notice sufficient and that no further notice of the Bid Procedures, the Auction, and the hearing on this Motion is necessary.

12. Additionally, upon filing this Motion and upon entry of the Bid Procedures Order, the Debtor's proposed real estate brokers –Avison Young-New York LLC ("Avison Young") will take the following steps to market the Property in anticipation of the Auction, to ensure that the estate obtains the highest and best offer for the Real Property:

- List and showcase the Property on Avison Young's and www.loopnet.com websites.
- Solicit prospective buyers by phone and email.
- Provide a data room for approved marketing and due diligence materials to interested parties.
- Supervise site inspections for interested parties.
- Install signage announcing the availability of the Property.
- Advertise the Property in various publications.
- Issue a press release to various news and Internet sources.
- Implement the following Internet and electronic advertisements:
- List Property on www.loopnet.com and www.costar.com.
- Distribute E-flyers and on marketing web services and Avison Young's proprietary database.
- Place an electronic advertisement in appropriate publications.

c. Auction

13. In the event that the Debtor timely receives more than one Qualified Bid,the Debtor shall conduct an Auction of the Real Property.

14. The Auction will take place on **April 8, at 11:00 a.m. (PrevailingEastern Time),** or at such other place, date and time as designated by the Debtor. The Auction will be conducted at the Law Offices of Isaac Nutovic, 26th Floor, NewYork, New York 10016, and must be attended in person by each prospective bidder or their legal designee with full authority to bind such bidder legally.  The Auction will be transcribed by a court reporter.

15. The Auction will be conducted by the Debtor as a traditional "English"auction, whereby Qualified Bidders make competing bids to purchase the Property, bidding openly against one another, with each bid being higher than the previous bid and consistent with the bidding terms detailed below.

    (i)        Only the Qualified Bidders that have delivered the full amount of their Deposit to the Debtor will be entitled to participate in the Auction, and each Qualified Bidder is required to appear in person at the Auction, or through a duly authorized representative. During the Auction, bidding will begin with the then best Qualified Bid and will subsequently continue in minimum increments of at least $50,000 higher than the previous Qualified Bid (the "Bid Increment").

    (ii)      The Auction shall continue until there is only one offer that the Debtor determines, in its sole discretion (after consultation with his real estate advisors and the Lender) is the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (the "Successful Bid"). The Qualified Bidder submitting such Successful Bid (the "Successful Bidder") shall have the rights and responsibilities of the Stalking Horse Purchaser, as set forth in the Sale Agreement, as applicable, together with any changes made thereto by the Successful Bidder as to which the Debtor has agreed.

16. At the conclusion of the Auction, the second highest bidder will be announced and confirmed at the Sale Hearing as a "back up" bidder (the "Back-up Bidder") whose final bid to acquire the Property (the "Back-up Bid") shall become the Successful Bid should the Successful Bid at Auction fail to consummate the purchase of the Real Property. The Deposit of the Back-up Bidder will be returned within two business days after the closing of the Successful Bid.

17. All Qualified Bidders shall be bound by their bids until conclusion of the Auction, subject to their rights under their respective agreements of sale and applicable law. Additionally, the Successful Bidder and the Back-Up Bidder shall be bound by their respective bids until the Closing of the Sale of the Property. If the Successful Bidder is unable or unwilling to close the sale in accordance with the Successful Bidder's rights under its Sale Agreement, the Successful Bidder shall forfeit its Deposit to the Debtor, and the Debtor, without further notice or hearing, may close the sale with the Back-Up Bidder, who shall then be obligated to close the sale on the terms of the Back-Up

Bidder's Sale Agreement upon twenty business days' prior written notice, time being of the essence. If the Back-Up Bidder is unable or unwilling to close the sale in the time permitted, subject to the Back-Up Bidder's rights under its agreement of sale, the Back-Up Bidder shall forfeit its Deposit to the Debtor.

18. In the event that the Debtor fails to receive a Qualified Bid, the Debtor reserves the right to cancel the Auction and to proceed with the Sale Hearing to seek approval of the sale of the Real Property to the Stalking Horse Purchaser pursuant to the Sale Agreement.

19. If the Real Property is sold to a Purchaser other than the Stalking Horse Purchaser following the Auction, then (provided the Stalking Horse Purchaser is not in default of the Sale Agreement), the Stalking Horse Purchaser shall be entitled to receive an aggregate sum not to exceed $250,000.00 (the "Break-up Fee") which is 2.5% of the Stalking Horse Bid. The Debtor believes that the Break-up Fee is comparable to other breakup fees awarded in similar cases and is justified as compensation for the time and resources expended in making the Stalking Horse Bid and for providing a floor for the Auction.

**II.  Approval of the Sale Following Auction**

a.  The Sale of the Property is Supported by Legitimate Business Justifications

20. Section 363(b)(1) provides that the "[t]he Debtor, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The decision to use, sell or lease property of the estate is subject to the exercise of the Debtor's business judgment. See Committee of Equity Sec. Holders

v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983). Further, to obtain court approval to sell property under section 363(b) of the Bankruptcy Code, a debtor need only show a legitimate business justification for the proposed action. See id. at 1070. ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

21. The Debtor is winding down the Debtor's business by liquidating its sole asset, the Property. The Debtor is unable to create value without the consent of the Lender, which has offered to pay (i) amounts necessary to discharge liens senior in priority to its mortgage, (ii) $100,000 for unsecured creditors and  (iii) all administration claim funds and U.S. Trustee fees necessary to confirm a plan, if the Property is sold through a plan and auction sale. The Debtor is seeking to sell the Property expeditiously to maximize value for unsecured creditors. Liquidation of the Debtor's Property is warranted and necessary at this time.

22. In addition, prompt liquidation of the Property is required because of the risk of deterioration of the Property and accrual of real estate tax liens which are superior to the Lender's mortgage lien.

23. The Debtor believes that the sale of the Real Property, as outlined in this Motion, is the estate's best opportunity to recover the maximum value from the Property for the benefit of the estate and its creditors.

b.   Sale Free and Clear of All Liens

24. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property free and

clear of any interest in such property of an entity other than the estate only if:

(i)      applicable nonbankruptcy law permits the sale of such property free and clear of such
interest;

(ii)     such entity consents;

(iii)    such interest is a lien and the price at which such property is to be sold is greater than
the aggregate value of all liens on such property;

(iv)    such interest is in bone fide dispute; or

(v)     such entity should be compelled, in a legal or equitable proceeding, to accept a money
satisfaction of such interest.

25. Section 363(f) is drafted in the disjunctive and satisfaction of any one of its five

requirements will suffice to permit a sale "free and clear" of liens. See Michigan

Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),

930 F.2d 1132, 1147 n.24 (6th Cir. 1991)(stating that section 363(f) of the Bankruptcy

Code is written in the disjunctive and holding that the court may approve the sale free

and clear provided at least one of the subsections is satisfied).

26. Several courts have held that notwithstanding the use of the term "interest" in the

statutory language of section 363(f), such section grants bankruptcy courts the power to

convey assets free and clear of claims. See, e.g., In re Trans World Airlines., Inc., 322

F.3d 283, 290 (3rd Cir. 2003); In re Medical Software Solutions, 286 B.R. 431, 446

(Bankr. D. Utah 2002); In re Trans World Airlines, Inc., Case No. 01-0056, 2001 WL

1820325 at *5 (Bankr. D. Del. Mar. 27, 2001) ("Authorizing the sale [of debtor's

assets] free and clear of . . . successor liability claims achieves the purpose of section

363 [of the Bankruptcy Code] intended by Congress.").

27. Section 105(a) of the Bankruptcy Code provides additional support for court's authority

to convey assets free and clear of claims. See Volvo White Truck Corp. v.

Chambersburg Beverage, Inc. (In re White motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of Title 11). See also, Equity Broadcasting Corp. v. Winstar New Media Co., Inc. (In re Winstar Communications, Inc.), 284 B.R. 40, 48 (Bankr. D. Del 2002) (approving a sale order transferring the debtor's securities free and clear of all encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code).

28. Currently, the Property is subject to real estate tax liens approximating $900,000; the Lender's mortgage lien in excess of $45,000,000. Several mechanics liens were filed in 2020 and 2021, but the Debtor believes that by statute they have expired; even if they were still liens, they would be junior to the Lender's mortgage lien and unsecured.

29. The Debtor does not anticipate that any of the lienholders will oppose the Debtor's sale of the Property. Additionally, because all known creditors and parties in interest are being served with this Motion, if there are any lienholders that the Debtor is not aware of, such lienholders would be required to respond to this Motion and provide evidence of any such alleged liens. For all of the foregoing reasons, the Debtor submits that the sale of the Property should be permitted free and clear of all liens, claims and encumbrances, occupants, tenancies and rights to possession of any person with any such liens, claims and encumbrances to attach to the sale proceeds.

   c.   Good Faith Purchaser Pursuant to Bankruptcy Code Section 363(m)

30. The Debtor also requests that this Court enter an order finding that the Successful Bidder constitutes a good faith purchaser of the Property, pursuant to Section § 363(m)

of the Bankruptcy Code, such that the reversal or modification on any appeal of the sale

of the Property to the Successful Bidder shall not affect the validity of the sale to the

Successful Bidder whether or not the Successful Bidder knew of the pendency of the

appeal. Such relief will ensure the finality of the sale and garner the highest value for

the Property.

31. As set forth in the Sale Agreement, the Stalking Horse Purchaser, and any Successful

Bidder designated after the Auction, have and will be required to represent to the

Debtor that it is undertaking the Sale Agreement and the proposed transaction with the

Debtor at arm's-length, for value and in good faith, without engaging in fraud of

collusion of any kind, in accordance with Section 363(m) of the Bankruptcy Code.

## NOTICE

32. Full copies of the Notice and Motion, including the related exhibits, are being  served by

first class mail upon: (i) the Office of the United States Trustee; (ii) counsel to the

Stalking Horse Purchaser; (iii) counsel to the Lender (iv) all known creditors and parties

in interest; and (v) all parties having filed a  notice of appearance and request for service

of papers in the Debtor's case.

## NO PRIOR RELIEF REQUESTED

33. No prior motion for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that:

(i) the Motion be granted;

(ii)  the proposed Bid Procedures Order in substantially the form annexed hereto as <u>Exhibit D</u>

be entered (iii) the Sale Agreement (and Breakup Fee), substantially in the form annexed as <u>Exhibit</u>

<u>C</u> be approved, and (iv) the Sale Order (to be submitted following the designation of the

Successful Bidder), be entered; and

(v) the Debtor be granted such other and further relief as is just.

Dated: February 16, 2025
     New York, New York

                                         **Law Offices of Isaac Nutovic**

                   By:    <u>*/s/ Isaac Nutovic*</u>
                            Isaac Nutovic
                            261 Madison Avenue, 26th Floor
                            New York, NY 10016
                            (917) 922-7963
                            inutovic@nutovic.com

                            *Proposed Counsel for the Debtor*
                            *and Debtor-In-Possession*

EXHIBIT A

## <u>BID PROCEDURES</u>

The following Bid Procedures shall govern the auction process for the sale of, collectively, the land, buildings and improvements located at (i) 1550 Bedford Avenue Brooklyn, New York, (the "<u>Real Property</u>") pursuant to the Plan of Liquidation (as the same may be amended or modified, the "<u>Plan</u>") filed by 1550 Bedford Ave LLC (the "<u>Debtor</u>") in the Chapter 11 case of 1550 Bedford Ave LLC (the "<u>Debtor</u>"), Case No. 24-45433 (ess) (the "<u>Bankruptcy Case</u>"), pending before the United States Bankruptcy Court, Eastern District of New York (the "<u>Bankruptcy Court</u>"), and the Bankruptcy Court's Order dated _____, 2025 authorizing the Auction of the Real Property, pursuant to higher or better Qualified Bids received by the Debtor, in furtherance of the Plan and related relief, and any other orders issued by the Bankruptcy Court regarding the sale of the Real Property or the Plan.

1.    **<u>Determination of "Qualified Bidder" Status</u>**.  Any potential bidder who wishes to participate in the Auction (as hereinafter defined) and to bid to acquire the Real Property must be a "<u>Qualified Bidder</u>".   A Qualified Bidder is: (i) DCP Bedford Graham, LLC, or its assignee, as credit bidder up to the amount of $14,000,000.00, and (ii) a potential bidder who, *on or before <u>April 3, 2025 at 5:00 p.m. (Eastern Time)</u>* (the "<u>Qualified Bidder</u> <u>Deadline</u>"), delivers, so as to be actually received by (x) counsel to the Debtor, Law Offices of Isaac Nutovic, 261 Madison Avenue, 26th Floor, New York, N.Y. 10016, Attn: Isaac Nutovic; (y) counsel to DCP Bedford Graham LLC, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, Attn: William Heuer; and (z) Avison Young-New York LLC or such other real estate broker then retained and designated by the Debtor (the "<u>Real Estate Broker</u>"), a <u>written</u> submission that:

(a)      fully discloses the identity of the person or entity that will be bidding for the Real Property (the "<u>Bidder</u>") or otherwise participating in connection with such bid on behalf of the Bidder, and the terms of any such participation;

(b)      states that the Bidder is financially able and interested in acquiring the Real Property for a cash price of not less than Ten Million Dollars Five Hundred Thousand ($10,500,000.00) (which sum shall be at least $500,000 above the Opening Bid, as hereinafter defined), without contingencies as to financing and/or additional due diligence (it being understood, however, that the Bidder, while bound to its bid, shall not be deemed to have made an offer to acquire the Real Property binding upon the Debtor prior to the time that the Auction, as hereinafter defined, is conducted and the Sale approved by the Bankruptcy Court);

(c)      is accompanied by financial information which fairly and reasonably demonstrates the Bidder's ability (and the sources of the Bidder's ability) to close on its purchase of the Real Property if the Bidder submits the Successful Bid (defined below) and becomes the Successful Bidder (as hereinafter defined), in an amount at least as much as its bid;

(d)      is accompanied by evidence that a good faith deposit in the amount  of 5% of the Bidder's Bid, or at least Five Hundred and Twenty Five Thousand Dollars and 32/100 ($525,000.00) (the "<u>Deposit</u>") in immediately available

funds has been made (or is concurrently being made) by <u>wire</u> <u>transfer</u> to the Debtor, pursuant to wire instructions to be provided by the Debtor, and agreeing that the Deposit shall be held by the Debtor in a non-interest bearing, segregated, sub-account of the primary account the Debtor maintains for the Debtor's estate in accordance with the terms hereof;

(e)    agrees in writing that if the Bidder is the Successful Bidder, it shall, within three (3) Business Days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of its final bid at the Auction, with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT**;

(f)    agrees in writing to close on the purchase of the Real Property if the Qualified Bidder's bid at the Auction is selected as the Successful Bid (as hereinafter defined),  forty five (45) Calendar Days after the Auction or thirty (30) Calendar Days from the entry of a Bankruptcy Court order approving the Sale, which ever is earlier, or on such other date as the Debtor and the Successful Bidder shall otherwise agree to in writing, or may otherwise be directed by Bankruptcy Court order, or as may otherwise be established in accordance with the terms hereof (such date, the "<u>Closing Date</u>"), with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**;

(g)    agrees in writing that if such Bidder is determined by the Debtor, after consultation with DCP Bedford Graham LLC, to have submitted the second highest or best bid at the Auction (the "<u>Back-up Bid</u>") and, therefore, to be designated the back-up bidder (the "<u>Back-up Bidder</u>"), and is notified in writing that the Debtor has determined to proceed with the Back-up Bid after default by the Successful Bidder, to close on the purchase of the Real Property on the Back-up Closing Date (as hereinafter defined), with **TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING;**

(h)    agrees in writing that if such Bidder (i) is the Successful Bidder, that the Deposit shall become non-refundable if the Bidder's bid at the Auction is selected as the Successful Bid and shall be forfeited by such Successful Bidder as liquidated damages if the Successful Bidder shall fail to close the purchase for any reason whatsoever on the Closing Date (other than for failure of the Debtor to execute and deliver the Deed and related documents; and (ii) is the Back-up Bidder and the Debtor, after consultation with DCP Bedford Graham LLC, determines to proceed with the Back-up Bid after default by the Successful Bidder, that the Deposit shall become non-refundable and shall be forfeited by such Back-up Bidder as liquidated damages if the Back-up Bidder shall fail to close the purchase for any reason whatsoever on the Back-up Closing Date (other than for failure of Debtor to execute and deliver the Deed and related documents; and

(i)    agrees to these Auction Sale Procedures by signing and delivering

an executed original of this document at or prior to the commencement of the Auction to counsel to the Debtor and counsel for DCP Bedford Graham LLC; and

(j)        attaches an executed contract to purchase the Real Property substantially in the form annexed hereto as Exhibit "1", marked to show proposed changes.

2.    **The Opening Bid**. _____ (the "Stalking Horse Bidder") with a Bid of $10,000,000 (the "Opening Bid") is deemed a Qualified Bidder and shall be deemed to have submitted the Opening Bid with the right to submit additional Bids.

3.    **Auction.** If the Debtor, after consultation with DCP Bedford Graham LLC, determines that there are no submissions by Qualified Bidders other than the Stalking Horse Bidder by the Qualified Bidder Deadline, then the Stalking Horse Bidder shall be determined to be the Successful Bidder pursuant to its Opening Bid. In the event that the Debtor receives by the Qualified Bidder Deadline one or more submissions that the Debtor determines to be from Qualified Bidders, then the Debtor, DCP Bedford Graham LLC, and the Real Estate Broker shall conduct an auction with respect to the Real Property (the "Auction") on **April 8, 2025 at 11:00 a.m. (Eastern Time) at the Law Offices of Isaac Nutovic, or such other location determined by the Debtor**. The Auction shall be live and in person. The Auction shall be governed by the following procedures:

(a)    Only the Real Estate Broker, Debtor, DCP Bedford Graham LLC and Qualified Bidders, and their respective counsel, agents and designated representatives may participate at the Auction, and only such parties, any brokers or auctioneers appointed by Order of the Bankruptcy Court in the Bankruptcy Case and a stenographer may be present throughout the Auction;

(b)    Only the Stalking Horse Bidder and Qualified Bidders shall be entitled to make any subsequent and additional bids at the Auction;

(c)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(d)    Other than the Stalking Horse Bidder, Qualified Bidders shall participate in person or through a duly authorized representative at the Auction; the Stalking Horse Bidder may participate in the Auction in person, by telephone or through counsel present at the Auction;

(e)    The Stalking Horse Bidder is deemed to have made an initial Opening Bid of $10,000,000 (the "Stalking Horse Bid");

(f)    The first Bid over the Opening Bid shall be no less than $10,500,000. Qualified Bidders may thereafter make successive

bids in increments of at least $50,000 (the "Bid Increments") higher than the previous bid (or such other amount as may be agreed to by the Debtor after consultation with the Real Estate Broker) unless and until the bidding reaches $12,000,000, at which point successive bids in increments of at least $25,000 (or such other amount as my be agreed to by the Debtor after consultation with the Real Estate Broker) will be accepted;

(g)     The Auction shall continue until such time as it appears to the Debtor and DCP Bedford Graham LLC in their reasonable discretion that none of the Qualified Bidders is prepared to advance the Auction and there is only one offer that the Debtor, after consultation with DCP Bedford Graham LLC, determines is the highest or best offer submitted at the Auction from among the Qualified Bidders, including the Stalking Horse Bidder (the "Successful Bid" and the Qualified Bidder that submitted the Successful Bid, the "Successful Bidder"). The Debtor shall give fair warning of the closing of the bidding.

(h)     If more than one Qualified Bidder submits a bid in excess of the Opening Bid, after selection of the Successful Bidder, then the Debtor, after consultation with DCP Bedford Graham LLC, shall determine which Qualified Bid constitutes the Back-up Bid;

(i)      In considering bids submitted by Qualified Bidders at the Auction, the Debtor or DCP Bedford Graham LLC may request that Qualified Bidders provide for review by the Debtor at the Auction financial information which fairly and reasonably demonstrates the Bidder's ability (and the sources of the Bidder's ability) to close on its purchase of the Real Property if the Bidder should be the Successful Bidder based upon the bids submitted at the Auction;

(j)      Deposits submitted by Qualified Bidders who do not become the Successful Bidder or Back-up Bidder shall be returned by the Debtor to such Qualified Bidders within three (3) Business Days after the Auction, except as otherwise provided herein;

(k)     Bids at the Auction must be all cash, without financing or other contingencies; and

(l)      Bids at the Auction must be able to close on the sale of the Real Property no later than forty-five (45) days after the Auction or ten (10) days upon entry of a Bankruptcy Court order approving the sale of the Real Property, whichever is later.

4.    **Obligation to Close and Default**.  (a) The Successful Bidder (or, upon consent granted by the Debtor, after consultation with DCP Bedford Graham LLC, in writing at or prior to the Closing, an assignee of the Successful Bidder) shall close on the purchase of the Real Property and pay the amount of the Successful Bid, less its Deposit previously posted, on the  Closing Date, with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**.  The Successful Bidder shall be obligated to close title to the Real Property and there is no contingency of any kind or nature that will permit the Successful Bidder not to proceed at the Closing other than the inability of the Debtor to deliver title to the Real Property.  In the event the Successful Bidder shall fail to timely close the purchase of the Real Property, the Successful Bidder shall be in default and the Successful Bidder shall forfeit its Deposit.  Notwithstanding the foregoing, the Debtor, with the written consent of DCP Bedford Graham LLC, shall have the right, but not the obligation, to extend the time for Closing by the Successful Bidder up to an additional ten (10) Business Days (the "Adjourned Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Successful Bidder's obligation to close during such Adjourned Closing Period; and in such event, if the Successful Bidder shall fail to close the purchase of the Real Property prior to expiration of the Adjourned Closing Period, the Successful Bidder shall be in default and the Successful Bidder shall  forfeit  its  Deposit.

(b)    If for any reason the Successful Bidder shall fail to timely close the sale of the Real Property and the Debtor, after consultation with DCP Bedford Graham LLC, determines to proceed with the Back-up Bid, the Back-up Bidder (or, upon consent granted by the Debtor, after consultation with DCP Bedford Graham LLC, in writing at or prior to the Back-up Closing Date, an assignee of the Back-up Bidder) shall close on the purchase of the Real Property and pay the amount of the Back-up Bid, less its Deposit previously posted, on the later of (i) the Closing Date, and (ii) twenty (20) Business Days after written notice of the Successful Bidder's default in closing (the "Back-up Closing Date"), with **TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**.  If the Debtor proceeds with the Back-up Bid then the Back-up Bidder shall be obligated to close title to the Real Property and there shall be no contingency of any kind or nature that will permit the Back-up Bidder not to proceed on the Back-up Closing Date other than the inability of the Debtor to deliver title to the Real Property.  In the event the Back-up Bidder shall be obliged, but shall fail, to timely close the purchase of the Real Property, the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Debtor, with the written consent of DCP Bedford Graham LLC, shall have the right, but not the obligation, to extend the time for Closing by the Back-up Bidder up to an additional ten (10) Business Days (the "Adjourned Back-up Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Back-up Bidder's obligation to close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder shall fail to close the purchase of the Real Property prior to expiration of the Adjourned Back-up Closing Period, the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit.

5.    **Deposits of Successful Bidder and Back-up Bidder**.  (a) The Deposit submitted by the Successful Bidder shall be held in escrow by the Escrow Agent pending the

closing of the sale.   The Successful Bidder's Deposit shall be applied to the sale price or as otherwise provided for in the Plan upon the closing of the sale, unless the Successful Bidder shall default and fail to close and forfeit its Deposit.

(b)     The Deposit submitted by the Back-up Bidder shall be held by the Debtor in a non-interest bearing, segregated sub-account of the primary account the Debtor maintains for the Debtor's estate until the Closing.  If the Closing does not take place within sixty (60) Calendar Days after the Auction, upon application to the Court and upon cause shown, to the extent required by the Court the Back-up Bidder Deposit shall be returned.   However, if the Successful Bidder fails to close and the Debtor decides, after consultation with the DCP Bedford Graham LLC, to proceed with the Back-up Bid, then the Back-up Bidder's Deposit shall continue to be held by the Debtor and shall be applied to the sale price or as otherwise provided for in the Plan upon the closing of the sale on the Back-up Closing Date, unless the Back-up Bidder shall default and fail to close and forfeit its Deposit, which shall be remitted to the Debtor's estate.

6.     **Due Diligence**.   Each Bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid.

7.     **DCP Bedford Graham LLC, as Lender**.   DCP Bedford Graham LLC, or an affiliate thereof, may provide financing to the proposed Stalking Horse Bidder.  As is set out above, neither the Stalking Horse Bid nor any other Qualified Bid shall be contingent upon financing.

8.     **Reservation of Rights**.   In the interest of maximizing the results realized through the Auction, the Debtor, after consultation with DCP Bedford Graham LLC, reserves the right to: (a) modify any of the deadlines set forth in these Bid Procedures; (b) modify or waive, at or prior to the close of the Auction, the procedures and terms and conditions regarding the sale of the Real Property; and/or (c) adjourn the Auction and/or Closing.   Anything to the contrary contained in these Bid Procedures notwithstanding, the Debtor, upon the written consent of DCP Bedford Graham LLC, shall have the right, to adjourn the Closing Date or the Back-up Closing Date to remedy any defect to title of the Real Property.

9.     **Additional Terms, Conditions and Procedures**.

(a)     If the Debtor is unable to deliver title to the Real Property in accordance with these Auction Sale Procedures or the Plan for any reason whatsoever, the prospective purchaser will have no recourse against the Debtor, the Debtor, the post- confirmation Debtor, the DCP Bedford Graham LLC, their respective counsel or any broker or auctioneer that may be retained by Order of the Bankruptcy Court; *provided, however*, that a Qualified Bidder in this circumstances shall be entitled to a return of its Deposit.

(b)     By participating in the Auction, all Bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes relating to the Real Property or the Bankruptcy Case.  Any disputes concerning the sale of the Real Property shall be determined by the Bankruptcy Court which shall retain sole and exclusive jurisdiction over all matters relating to the Real Property, the Plan and the sale contemplated by these Auction Sale Procedures.

(g)     The Sale is subject to final approval by the Bankruptcy Court at a hearing to be held on **_____, 2025 at ____ a.m.** (Eastern Time) (or as soon thereafter as practicable**),** before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York, 270 Cadman Plaza East, Courtroom 3585, Brooklyn, New York.

THE UNDERSIGNED BIDDER HEREBY CONSENTS TO AND AGREES TO BE BOUND BY THE FOREGOING AUCTION SALE PROCEDURES:

Print Name of Bidder

Print Name and Title of Authorized
Representative of Bidder

Signature of Authorized Representative

Date:

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------x

In re                                           Chapter 11

    1550 BEDFORD AVE LLC,                    Case No. 24-45433 (ess)

                 Debtor.
-----------------------------------------x

**NOTICE OF (A) AUCTION DATE AND (B) HEARING ON APPROVAL OF THE
SALE OF 1550 BEDFORD AVENUE BROOKLYN NEW YORK PROPERTY[1]**

      ***PLEASE TAKE NOTICE*** that on March __, 2025, the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") entered an order (the "Bid Procedures Order"), approving, among other things, the terms and procedures (the "Bid Procedures") by which 1550 Bedford Ave LLC (the "Debtor"), the above- captioned debtor can sell the land, buildings and improvements located at 1550 Bedford Ave LLC, Brooklyn, New York (the "Property"). A copy of the Bid Procedures is enclosed herewith or can be requested by calling, writing, or sending an e-mail to the Debtor's undersigned counsel.

      ***PLEASE TAKE FURTHER NOTICE*** that any individual or entity wishing to submit an offer to purchase the Property must abide by the terms and conditions of the Bid Procedures Order and the Bid Procedures.

      ***PLEASE TAKE FURTHER NOTICE*** that a Potential Bidder who desires to make a bid must deliver a written copy of its Bid Package[1] to (i) the Law Offices of Isaac Nutovic, Attorneys for the Debtor, 261 Madison Avenue, 26th Floor, New York, New York 10016, and (ii) Avison Young—New York LLC, Special Real Estate Advisors for the Debtor, _____, New York _____, Attn: _____; e-mail: _____ **not later than 5:00 p.m. (prevailing Eastern Time) on April 3, 2025** (the "Bid Deadline").

      ***PLEASE TAKE FURTHER NOTICE*** that the Auction, if required, will commence at **11:00 a.m. (prevailing Eastern Time) on April 8, 2025**. The Auction will take place at the Law Offices of Isaac Nutovic, 261 Madison Avenue, 26th Floor, New York, New York 10016. Only the Qualified Bidders that have delivered the full amount of their Deposit to the Debtor will be able to participate.

      ***PLEASE TAKE FURTHER NOTICE*** that on _____, 2025 at ___ p.m., the Sale Hearing will be held before the Honorable Elizabeth S. Stong, United States Bankruptcy

---

[1] Capitalized terms used in this notice and not otherwise defined shall have the meanings ascribed to them in the Bid Procedures. If an inconsistency exists between this notice and the Bid Procedures, the terms of the Bid Procedures shall control.

Judge, in her courtroom at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, at which the Debtor will seek entry of an order (the "Sale Approval Order") authorizing and approving the sale to the Successful Bidder.  The Sale Hearing may be adjourned or rescheduled without further notice except by an announcement of the adjourned date at the Sale Hearing.

  ***PLEASE TAKE FURTHER NOTICE*** that objections to the relief request in the Sale Approval Order must be filed and served so as to be received by Chambers of Judge Elizabeth S. Strong and the undersigned counsel by no later than 4:00 p.m. (prevailing Eastern Time) on_____.

Dated: New York, N.Y
   March    2025

      LAW OFFICES OF ISAAC NUTOVIC
      Attorneys for 1550 Bedford Ave LLC

      By: /s/*Isaac Nutovic*
        Isaac Nutovic
       261 Madison Avenue, 26th Floor
       New York, New York 10016
        (917) 922-7963

EXHIBIT C

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** is made and entered into as of this ____ of _____, 2025 (the "Execution Date"), by and among (i) Mironova LLC or its assignee ("Purchaser"), and (ii) 1550 Bedford Ave LLC ("Seller").

WHEREAS, Purchaser desires to purchase, and Seller desires to sell, convey, assign, transfer and deliver to Purchaser, substantially all of Seller's assets;

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual covenants, agreements and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I. DEFINITIONS AND RULES OF CONSTRUCTION.

**Section 1.1.   Definitions.** Unless otherwise defined herein, terms used herein shall have the meanings set forth below:

"Acquired Assets" means all of the direct and indirect right, title and interest of Seller in and to the assets of Seller set forth on Schedule 1.1(a). For purposes of clarification, the Acquired Assets shall not include cash or cash equivalents or any assets not listed by the Debtor in schedules filed in the Bankruptcy Court..

"Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities or otherwise.

"Agreement" means this Asset Purchase Agreement, including all the Exhibits and the Schedules hereto, as the same may be amended from time to time in accordance with its terms.

"Assumed Obligations" means those Liabilities of Seller set forth on Schedule 1.1(b), including, if applicable, the mortgage held by the Lender, which schedule may be amended by written agreement of Purchaser and Seller from time to time through and including the Closing Date.

"Auction" means the auction conducted by Seller pursuant to the Bidding Procedures and Bidding Procedures Order.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York.

"Bid" or "Bids" shall have the meaning set forth in Section 6.5 hereof.

"Bidders" shall have the meaning set forth in Section 6.5 hereof.

"Bidding Procedures" means the procedures outlined in the Bidding Procedures Order.

"Bidding Procedures Order" means an order entered by the Bankruptcy Court approving, among other things, (i) the Bidding Procedures, (ii) the designation of Purchaser as the "stalking horse bidder," (ii) the Expense Reimbursement, and (iv) the Breakup Fee.

"Bill of Sale" shall have the meaning set forth in _____ hereof.

"<u>Breakup Fee</u>" shall have the meaning set forth in Section 9.2(a) hereof.

"<u>Business Day</u>" means a day other than Saturday, Sunday or other day that banks located in New York, New York are authorized or required by Law to close.

"<u>Cash Purchase Price</u>" shall have the meaning set forth in _____ hereof.

"<u>Casualty</u>" shall have the meaning set forth in Section 6.6 hereof.

"<u>CERCLA</u>" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) and any regulations promulgated thereunder.

"<u>Chapter 11 Case</u>" means the case commenced by Seller under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"<u>Claim</u>" has the meaning ascribed by Bankruptcy Code §101(5), including all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations and liabilities of any kind or nature under contract, at Law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"<u>Closing</u>" shall have the meaning set forth in _____ hereof.

"<u>Closing Date</u>" shall have the meaning set forth in _____ hereof.

"<u>Code</u>" means the United States Internal Revenue Code of 1986, as amended.

"<u>Confirmation Order</u>" means a confirmed chapter 11 plan.

"<u>NDA</u>" means the Nondisclosure Agreement, dated _____, 2025, between Purchaser and Seller.

"<u>Contract</u>" means any agreement, contract, commitment or other binding arrangement or understanding, whether written or oral.

"<u>Deposit</u>" means an amount in cash equal to five percent (5%) of the Cash Purchase Price.

"<u>Dollars</u>" or "<u>$</u>" means dollars of the United States of America.

"<u>Environmental Laws</u>" shall have the meaning set forth in Section 4.2 hereof.

"<u>Execution Date</u>" shall have the meaning set forth in the Preamble hereto.

"<u>Exhibits</u>" means the exhibits hereto.

"<u>Excluded Liabilities</u>" shall mean any and all Claims, Liens, Tax or liability, obligation, agreement or contract other than the Assumed Obligations.

"<u>Final Order</u>" means an Order which has not been stayed or vacated and as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"<u>Governmental Authority</u>" means any United States federal, state or local or any foreign government, governmental regulatory or administrative authority, agency or commission or any court, tribunal or judicial or arbitral body.

"<u>Hazardous Materials</u>" shall mean (a) any petroleum products or byproducts, radioactive materials, friable asbestos or polychlorinated biphenyls or (b) any waste, material, or substance

defined as a "hazardous substance," "hazardous material," or "hazardous waste" or "pollutant" or otherwise regulated under any applicable Environmental Law.

"<u>Knowledge of Seller</u>" or "<u>Seller's Knowledge</u>" shall mean the actual knowledge of Yoel Goldman with no duty of investigation.

"<u>Law</u>" means any law, statute, regulation, ruling or Order of, administered or enforced by or on behalf of, any Governmental Authority.

"<u>Liability</u>" means any liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted).

"<u>Lender</u>" means DCP Bedford Graham LLC.

"<u>Lien</u>" or "<u>Liens</u>" means any charge, claim, lien, option, encumbrance, mortgage, pledge, security interest, conditional sale agreement or other title retention agreement, lease, security agreement, right of first refusal, option, restriction, tenancy, license, covenant, right of way, easement or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or statute or law of any jurisdiction) on property.

"<u>No Fee Event</u>" means (a) Seller' termination of this Agreement solely pursuant to Section 9.1(c), or (b) the failure of Seller to effect, or agree to effect, a plan of reorganization on or prior to 90 days of the date hereof.

"<u>Order</u>" means any decree, order, injunction, rule, judgment or consent of or by any Governmental Authority.

"<u>Permits</u>" means all certificates of occupancy or other certificates, permits, authorizations, filings, approvals and licenses possessed by Seller, or through which Seller have rights, that are used, useable or useful in the operation of the Business or the use or enjoyment or benefit of the Acquired Assets as set forth on <u>Schedule 1.1(c)</u>.

"<u>Person</u>" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"<u>Purchase Price</u>" shall have the meaning set forth in _____ hereof.

"<u>Purchaser</u>" shall have the meaning set forth in the Preamble hereto.

"<u>Qualified Bids</u>" shall have the meaning set forth in <u>the Bidding Procedures.</u>

"<u>Release</u>" shall have the meaning set forth in CERCLA.

"<u>Rule</u>" or "<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure.

"<u>Sale Order</u>" means an order entered by the Bankruptcy Court in a form reasonably satisfactory to Purchaser and Seller, authorizing Seller to sell the Acquired Assets to Purchaser pursuant to this Agreement and Sections 105, 363 and 365 of the Bankruptcy Code, free and clear of all Liens, claims and interests other than Assumed Obligations.

"<u>Schedules</u>" means the schedules attached hereto.

"<u>Seller</u>" and "<u>Seller</u>" shall have the meaning set forth in the Preamble hereto.

"<u>Successful Bid</u>" shall have the meaning set forth in the Bidding Procedures.

"Successful Bidder" shall have the meaning set forth in the Bidding Procedures.

"Tax" and, with correlative meaning, "Taxes" mean with respect to any Person all federal, state, local, county, foreign and other taxes, including, without limitation, any income, alternative or add-on minimum tax, estimated gross income, gross receipts, sales, use, ad valorem, value added, transfer, capital stock franchise, profits, license, registration, recording, documentary, intangibles, conveyancing, gains, withholding, payroll, employment, social security (or similar), unemployment, disability, excise, severance, stamp, occupation, premium, property (real and personal), environmental or windfall profit tax, together with any interest, penalty, addition to tax or additional amount imposed by any Governmental Authority responsible for the imposition of any such tax (domestic or foreign).

"Tax Return" means any report, return, declaration, claim for refund or other information or statement supplied or required to be supplied by any Seller relating to Taxes, including any schedules or attachments thereto and any amendments thereof.

"Transaction Documents" means this Agreement, the Bill of Sale and all other agreements, instruments, certificates and other documents to be entered into or delivered by any party in connection with the transactions consummated pursuant to this Agreement.

**Section 1.2.   Rules of Construction.** Unless the context otherwise clearly indicates, in this Agreement:

(a)    the singular includes the plural;

(b)    "includes" and "including" are not limiting;

(c)    "may not" is prohibitive and not permissive; and

(d)    "or" is not exclusive.

## ARTICLE II. PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES.

**Section 2.1.   Purchase and Sale of Assets.** On the terms and subject to the conditions set forth in this Agreement and the Sale Order, at the Closing, Seller shall sell, convey, assign, transfer and deliver to Purchaser, and Purchaser shall purchase, acquire and take assignment and delivery of, for the consideration specified in _____, all of the Acquired Assets, free and clear of all Liens other than Permitted Exceptions.

**Section 2.2.   Purchase Price.** The aggregate purchase price for the Acquired Assets (the "Purchase Price") shall be (i) cash in an amount equal to $10,000,000 (the "Cash Purchase Price"), and (ii) the assumption of the Assumed Obligations. Concurrently with the execution of this Agreement by Purchaser, Purchaser shall pay to Seller the Deposit by certified or bank check or by wire transfer, which shall be held by Seller in a non interest-bearing account and applied to payment of a portion of the Cash Purchase Price at the Closing. At the Closing, Purchaser shall pay by wire transfer to Seller an amount in cash equal to (x) the Cash Purchase Price, minus (y) the Deposit.

## ARTICLE III. CLOSING.

**Section 3.1.    Closing.** The closing of the transaction contemplated by this Agreement (the "Closing") will take place at the time and place specified in the Bidding Procedures with TIME BEING OF THE ESSENCE AS TO PURCHASER'S AND SELLER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND PURCHASER'S OBLIGATION TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.

**Section 3.2.    Deliveries by Seller.** At the Closing, Seller shall convey title to the Property to Purchaser, free of (a) all monetary liens to the fullest extent permitted by 11 U.S.C. §363(f), and (b) all claims, encumbrances, leases and other restrictions, except for the following (collectively, the "Permitted Exceptions"):

(i)    Zoning, building, environmental and other laws, ordinances, codes, restrictions and regulations of governmental authorities having jurisdiction over the Property and the claims thereof accruing after the Closing Date.

(ii)    Any state of facts which would be shown by an accurate survey and inspection of the Property

(iii)    All rights, easements and agreements for the erection and/or maintenance of water, gas, electric, telephone, cable, sewer or other utility pipelines, poles, wires, conduits or other like facilities and appurtenances thereto, over, across and under the Property

(iv)    All liens for unpaid real estate taxes not yet due and payable, and water and sewer charges, assessments and vault charges that are not due and payable as of the Closing Date and that are allocable to the period following the Closing Date

(v)    Minor variations between tax lot lines and lines of record title, provided same do not render title unmarketable

(vi)    All notes or notices of or violations of building, fire, sanitary, enviromnental, housing and any other Laws and Regulations of any nature whether or not noted or issued at the date hereof or at the Closing Date

(vii)    Any other matter (whether now existing or hereafter arising) that the Title Company may raise as (or which matter otherwise is) an exception to title, provided that the Title Company will omit such exception from the Title Policy without imposition of additional payment or premium

**Deliveries by Seller.** At the Closing, Seller shall deliver to the Purchaser (i) a bargain and sale deed without covenants against grantor's acts, which deed shall be in recordable form, contain a legal description in accordance with the deed received by Debtor, and be as otherwise in such form as is reasonably required by Purchaser's title insurance company or any other national reputable title company reasonably acceptable to Purchaser (the "Title Company"), (ii) a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the Internal Revenue Service, (iii) a New York State Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certificate and Certification of Exemption from the Payment of Estimated Personal Income Tax (Fonn TP-584) for the conveyance of the Property (the "State Transfer Tax

Return"), duly executed by Seller, (iv) a New York City Department of Finance Real Property Transfer Tax Return for the conveyance of the Property (the "City Transfer Tax Return"), duly executed and acknowledged by Seller, (v) a New York State Real Property Transfer Report, Form RP-5217NYC (the "Transfer Report"), duly executed by Seller, and (vi) an affidavit to the title company of the type customarily provided by sellers of real property in the New York, NY metropolitan area (provided such affidavit shall be limited to the actual Knowledge of Seller)

**[Deliveries by Purchaser.]** At the Closing, Purchaser shall deliver to the Seller the Cash Purchase Price minus the Deposit in immediately available funds, (ii) the State Transfer Tax Return, duly executed by Purchaser, (iii) the City Transfer Tax Return, duly executed by Purchaser, (iv) the Transfer Report, duly executed by Purchaser, (v) such evidence as the Title Company may reasonably require as to the authority of the person or persons executing documents on behalf of Purchaser, and (vi) such other instruments, agreements or other documents as may be necessary to effectuate the provisions of this Agreement.

## ARTICLE IV. REPRESENTATIONS AND WARRANTIES OF SELLER.

After the execution of this Agreement and until the Closing, the Seller shall:

(a)    Not make or suffer any alterations of the Property, or make any governmental filings with respect to the Property without the prior written consent of Purchaser; provided, however, that Seller shall have the right to record a Notice of Bankruptcy with the office of the County Clerk of Kings County, New York;

(b)    permit Purchaser and Purchaser's surveyors, inspectors, engineers, architects, contractors, environmental consultants and other agents to inspect and visit the Property from time to time at reasonable times and upon reasonable notice; and

**Section 4.1.   Brokers.** Seller has not incurred any Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby except as to Avison Young—New York LLC and will be responsible for its commission. Buyer has not incurred any Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby except as to ----------- and will be responsible for its commission.

**Section 4.2.   Environmental Matters.** To the Seller' Knowledge, (a) the Acquired Assets are in material compliance with all applicable Laws, regulations, or other legal requirements relating to the protection of the environment or human health and safety as it relates to Hazardous Materials ("Environmental Laws"); (b) Seller has not received written notice of any proceeding relating to or arising under Environmental Laws with respect to the Acquired Assets or the business, nor, to Seller' Knowledge, are any of the same being threatened in writing against any Seller or any real property owned, operated, or leased by any Seller; (c) Seller has received neither any written notice of, nor entered into, any obligation, order, settlement, judgment, injunction, or decree involving outstanding requirements relating to or arising under Environmental Laws; and (d) there has been no Release of any Hazardous Material into the environment at, onto, or from any property owned or leased by any Seller which would

reasonably be expected to result in material Liability, costs or Claims relating to any Environmental Law.

## ARTICLE V. REPRESENTATIONS AND WARRANTIES OF PURCHASER.

Purchaser represents and warrants to Seller as follows:

**Section 5.1.    Organization, Standing and Power.** Purchaser is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of its organization.

**Section 5.2.    Authorization.** Purchaser has all requisite power and authority to own, lease and operate its properties, to enter into this Agreement, to carry on the business and to execute and deliver the Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder. All Transaction Documents to which Purchaser is a party have been duly executed and delivered by Purchaser, except such Transaction Documents that are required by the terms hereof to be executed and delivered by Purchaser after the date hereof, in which case such Transaction Documents will be duly executed and delivered by Purchaser at or prior to the Closing, and all Transaction Documents constitute, or will constitute, as the case may be, the valid and binding agreements of Purchaser, enforceable against Purchaser in accordance with their terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar Laws of general applicability relating to or affecting creditors' rights and to general equitable principles.

**Section 5.3.    No Conflict or Violation.** Except to the extent any of the foregoing is not enforceable due to operation of applicable bankruptcy Law or the Sale Order, the execution, delivery and performance of the Transaction Documents and the consummation of the transactions contemplated thereby by Purchaser do not and shall not violate any Law or any provision of the organizational documents of Purchaser.

**Section 5.4.    Availability of Funds.** Purchaser has cash available or has existing borrowing facilities, which together are sufficient to enable it to consummate the transactions contemplated by this Agreement. True and correct copies of any such facilities and financial condition have been provided to Seller prior to the execution of this Agreement.

**Section 5.5.    Brokers.** Other than DJ Joshnson of Mathews Real Estate Investement Services whose fees shall be paid exclusively by the Purchaser, the Purchaser has incurred no Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

**Section 5.6.    Legal Proceedings.** There is no material claim, action, suit, proceeding, complaint, charge, hearing, grievance or arbitration pending or, to Purchaser's knowledge, threatened against or related to the business, whether at Law or in equity, whether civil or criminal in nature or by or before any arbitrator or Governmental Authority, nor are there any investigations relating to the business, pending or, to Purchaser's knowledge, threatened by or before any arbitrator or any Governmental Authority that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement; and, to Purchaser's actual knowledge, no event has occurred or circumstances exist that are reasonably likely to give rise or serve as a basis for any such action.

**Section 5.7.    Patriot Act**. Purchaser is not, and will not be, a Person with whom Seller is restricted from doing business with under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 and Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001 and regulations promulgated pursuant thereto, including persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Persons List.

**Section 5.8.    Good Faith Purchaser**. Purchaser represents that it is undertaking this Agreement and the proposed transaction with Seller at arms-length, for value and in good faith, without engaging in fraud or collusion of any kind, in accordance with Section 363(m) of the Bankruptcy Code. Purchaser has disclosed, and Seller acknowledges, that Purchaser may obtain financing for this transaction from DCP Bedford Graham LLC, but that this Agreement is not conditioned on such financing nor on any other financing.

**Section 5.9.**    Notwithstanding anything to the contrary in this Agreement, the provisions of this Section shall survive the Closing.

**Section 5.10. Acknowledgment of No Representations and Warranties.** Purchaser acknowledges that it is an experienced and sophisticated purchaser of commercial real estate projects such as the Property and that it has had a full and complete opportunity to conduct such investigations, examinations, inspections and analyses of the Property as Purchaser, in its absolute discretion, may deem appropriate. Except as expressly set forth herein, Purchaser further aclmowledges that Purchaser has not relied upon any statements, representations or warranties by Seller or any agent of Seller. Purchaser agrees that, except as expressly set forth herein, the Property shall be sold, and that Purchaser shall accept possession of the Property on the Closing Date in its current condition on the date hereof, strictly on an "AS IS, WHERE IS" AND "WITH ALL FAULTS AND DEFECTS, LATENT OR OTHERWISE, KNOWN OR UNKNOWN" basis, with no right of set-off or reduction in the Purchase Price, and that such sale shall be without representation or warranty of any kind, express or implied, including any warranty of income potential, operating expenses, uses, merchantability or fitness for a particular purpose, and Seller does hereby disclaim and renounce any such representation or warranty

## ARTICLE VI. COVENANTS OF PURCHASER AND SELLER; OTHER AGREEMENTS.

**Section 6.1.    Consents and Approvals.** Prior to Closing, Seller and Purchaser shall cooperate and use commercially reasonable efforts (a) to obtain all necessary consents and approvals to consummate the purchase and sale of the Acquired Assets and the assignment of the Assumed Obligations, together with any other necessary consents and approvals to consummate the transactions contemplated hereby, including, without limitation, obtaining the Bidding Procedures Order and Sale Order, (b) to make all filings, applications, statements and reports to all authorities that are required to be made prior to the Closing Date by or on behalf of Seller or any of their Affiliates pursuant to any applicable Law in connection with this Agreement and the transactions contemplated hereby, and (c) to obtain all required consents and approvals (if any) necessary to assign and transfer Seller's Permits included in the Acquired Assets to Purchaser at Closing. In the event that certain of Seller's Permits included in the Acquired Assets are not

transferable or replacements therefore are not obtainable on or before the Closing, but such Permits are transferable or replacements therefore are obtainable after the Closing, Seller and Purchaser shall continue to cooperate and use such commercially reasonable efforts after the Closing as may be required to obtain all required consents and approvals to transfer, or obtain replacements for, such Permits after Closing and shall do all things necessary to give Purchaser the benefits that would be obtained under such Permits. Seller shall not be required to take any action or incur any expense not paid for Purchaser or requiring permission of the Bankruptcy Court.

**Section 6.2.    Further Assurances.**

(a)    Seller shall file a motion seeking (i) to obtain the entry of the Bidding Procedures Order as soon as reasonably practicable and by no later than February 25, 2025; (ii) to hold the Auction no later than 90 days after the date of entry of the Bidding Procedures Order; and (iii) if Purchaser is the Successful Bidder, to obtain the entry of the Sale Order on the Bankruptcy Court's docket as soon as practicable and no later than 45 days after the conclusion of the Auction.

(b)    From time to time after the Closing but provided , (i) Seller, upon the reasonable request of Purchaser and at Purchaser's cost, shall execute and deliver such documents and instruments of conveyance and transfer as Purchaser may reasonably request in order to consummate more effectively the purchase and sale of the Acquired Assets as contemplated hereby and to vest in Purchaser title to the Acquired Assets transferred hereunder, or to otherwise more fully consummate the transactions contemplated by this Agreement.

**Section 6.3.    Bankruptcy Court Matters.**

(a)    Purchaser hereby acknowledges that (i) Purchaser's execution of this Agreement is an irrevocable offer to purchase the Property (ii) that the Seller will solicit and accept higher or better offers pursuant to the Bid Procedures; (iii) notwithstanding anything to the contrary contained in this Agreement, the obligations of the parties under this Agreement are contingent in all events on the entry by the Bankruptcy Comi of the Bid Procedures Order, (iv)  and notwithstanding anything to the contrary contained in this Agreement, in the event of a conflict between this Agreement and any term in the Bidding Procedures, the terms of the Bidding Procedures will govern; and (iv) notwithstanding anything to the contrary contained in this Agreement, Closing is conditioned upon entry of the Sale Approval Order.

(b)    As promptly as practicable, but in no event later than [•], 2025, Seller shall file in the Chapter 11 Case a motion, in form and substance reasonably acceptable to Purchaser, seeking the entry of (i) the Bidding Procedures Order and (ii) the Sale Order.

(c)    If Purchaser is designated as the Successful Purchaser, Seller shall seek entry of the Sale Order that, among other things, (i) approves the sale of the Acquired Assets to Purchaser, and authorizes Purchaser to proceed with the sale of the Acquired Assets on the terms and conditions set forth in this Agreement, (ii) includes a finding that Purchaser is a good faith purchaser of the Acquired Assets within the meaning of

section 363(m) of the Bankruptcy Code and is entitled to protections of section 363m) of the Bankruptcy Code.

(d)    Subject to the terms hereof and Seller's obligations as a debtor-in-possession, Seller and Purchaser shall use their respective good faith and commercially reasonable efforts to promptly make any filings, take all actions, and obtain any and all relief from the Bankruptcy Court that is necessary or appropriate to consummate the transactions contemplated by this Agreement and the Transaction Documents.

(e)    Seller shall conduct any auction process in accordance with the Bidding Procedures. Except as permitted by the Bidding Procedures Order, Seller shall comply with, and shall not amend, waive, modify or supplement, the Bidding Procedures.

**Section 6.4.    Auction Procedures.** The Auction procedures are set forth in the Bidding Procedures.  Notwithstanding anything to the contrary in this Agreement, the following terms and conditions shall govern:

(a)    The sale of the Acquired Assets, the approval of this Agreement and the consummation of the transactions contemplated hereby are expressly subject to (i) higher or better offers that may be received and accepted by Seller in consultation with Lender at the Auction, and (ii) entry of the Sale Order by the Bankruptcy Court.

(b)    Intentionally omitted.

(c)    Pursuant to the terms of the Bid Procedures, the second highest or best bid at the Auction, as determined by Seller after consultation with Lender, (including Purchaser's bid if Seller accepts a competing bid as the Successful Bid) shall remain in effect as a "back-up" bid.  The rights and obligations of the Back-up Bidder (as defined in the Bidding Procedures) is set forth in the Bidding Procedures. .

(d)    Only competing bids that are "Qualified Bids" shall be considered at the Auction. To be a Qualified Bid, a potential bidder must comply with the requirements set forth in the Bidding Procedures..

(e)    Seller and Purchaser shall cooperate in resolving or contesting any objections (including testimony or argument in Bankruptcy Court) to this Agreement, the Bidding Procedures Order or the Sale Order, and Purchaser and Seller shall bear its own costs relating thereto.

**Section 6.5.    Other Bids.** Purchaser acknowledges that pursuant to the Bidding Procedures Order, Seller and/or its representatives will solicit bids ("Bids") from other prospective purchasers (collectively, "Bidders") for the sale of all or any portion of the Acquired Assets, on terms and conditions substantially the same in all respects to this Agreement and in accordance with the procedures set forth in the Bidding Procedures Order.  Seller may also respond to inquiries or offers to purchase all or any portion of the Acquired Assets and perform any and all other acts related thereto that are required under the Bankruptcy Code, the Bidding Procedures Order, or other applicable Law, including supplying information relating to Seller and the assets of Seller to prospective purchasers.

**Section 6.6.    Casualty.** If, between the Execution Date and the Closing, any of the Acquired Assets shall be destroyed or damaged in whole or in part by fire, earthquake, flood,

other casualty or any other cause ("Casualty"), then Purchaser shall have the option to: (a) acquire such Acquired Assets on an "as is" basis and take an assignment from Seller of all insurance proceeds payable to Seller in respect of the Casualty; or (b) in the event that the Casualty resulted in a Material Adverse Effect, terminate this Agreement and the transactions contemplated hereby.

Section 6.7.   Disclaimer. Seller does not make, has not made and, if previously made, hereby expressly disclaims, any representations or warranties in connection with the transactions contemplated hereby other than those expressly set forth herein. It is understood that any data, any financial information, and projections or any memoranda or offering materials or presentations are not and shall not be deemed to be or to include representations or warranties of Seller and no representation or warranty is made with respect thereto and, if made, is hereby expressly disclaimed. Except as expressly set forth herein, no Person has been authorized by Seller to make any representation or warranty relating to Seller, the Acquired Assets, the Assumed Obligations or otherwise in connection with the transactions contemplated hereby and, if made, such representation or warranty is expressly disclaimed and may not be relied upon as having been authorized by Seller.

## ARTICLE VII. CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER.

The obligations of Purchaser under this Agreement are, at the option of Purchaser, subject to satisfaction of the following conditions precedent on or before the Closing Date.

Section 7.1.   No Financing Contingency. The Purchaser's obligations hereunder are not contingent on any financing

Section 7.2.   Due Diligence. As of the Auction Date, Purchaser shall be deemed to have completed its due diligence investigation and shall be deemed to be satisfied in all respect with the results thereof, and no ongoing due diligence contingency shall remain as a condition to Closing.

Section 7.3.   Bankruptcy Court Approval. The Sale Order shall have been entered by the Bankruptcy Court.

Section 7.4.   No Injunctions. On the Closing Date, there shall be no Laws or Orders that operate to restrain, enjoin or otherwise prevent or make illegal the consummation of the transactions contemplated by this Agreement. No action or proceeding initiated by any Governmental Authority seeking an Order prohibiting the consummation of the transactions contemplated by this Agreement shall be pending.

Section 7.5.   Closing Deliveries. Seller shall have delivered to Purchaser all of the closing deliveries set forth in 0 Agreement.

## ARTICLE VIII. CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER.

The obligations of Seller under this Agreement are, at the option of Seller, subject to the satisfaction of the following conditions precedent on or before the Closing Date.

Section 8.1.   Representations and Warranties; Covenants.

(a)   The representations and warranties of Purchaser contained herein shall be true and correct in all material respects on and as of the Closing Date (except for

representations and warranties made as of a specified date, which shall be true and correct as of that date in all material respects) with the same force and effect as though made by Purchaser on and as of the Closing Date.

(b)    Purchaser shall have performed and complied in all material respects with the obligations and covenants required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date.

**Section 8.2.    Consideration.** Purchaser shall have delivered to Seller the Cash Purchase Price.

**Section 8.3.    Bankruptcy Court Approval.** The Sale Order shall have been entered by the Bankruptcy Court.

**Section 8.4.    No Injunctions.** On the Closing Date, there shall be no Laws or Orders that operate to restrain, enjoin or otherwise prevent or make illegal the consummation of the transactions contemplated by this Agreement. No action or proceeding initiated by any Governmental Authority seeking an Order prohibiting the consummation of the transactions contemplated by this Agreement shall be pending.

**Section 8.5.    Closing Deliveries.** Purchaser shall have delivered to Seller: (a) a certificate signed by an officer of Purchaser, dated the date of the Closing Date, in form and substance reasonably satisfactory to Seller, certifying that the conditions specified in Section 8.1(a) and Section 8.1(b) have been satisfied as of the Closing and (b) all of the closing deliveries set forth in _____.

## ARTICLE IX. TERMINATION; TERMINATION PAYMENT.

**Section 9.1.    Termination.** This Agreement may be terminated prior to the Closing as follows:

(a)    by mutual written agreement of Purchaser and Seller;

(b)    automatically and without any action or notice by either Seller to Purchaser, or Purchaser to Seller, and immediately upon the entry thereof, if there shall be in effect a Final Order permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated under this Agreement;

(c)    by either Purchaser or Seller (<u>provided</u> that the terminating party is not then in material breach of any representation, warranty, covenant or other agreement contained herein), if there shall have been a material breach or misrepresentation of any of the representations or warranties or a material breach of any of the covenants set forth in this Agreement on the part of the other party, which breach would give rise to the failure of the condition set forth in Section 7.1 or Section 8.1, as applicable, and such breach is not cured within ten (10) days following written notice to the party committing such breach of which breach, by its nature, cannot be cured prior to the Closing;

(d)    by Purchaser, if the Bidding Procedures Order shall not have been entered by [•];

(e)    Intentionally omitted;

(f)    by Purchaser, if the Sale Order shall not have been entered by [•];

(g)    Intentionally omitted;

(h)    Intentionally omitted;

(i)    Intentionally Omitted;

(j)    by Purchaser (<u>provided</u> that Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein) if it shall have reasonably determined that one or more conditions set forth in Article VII has not been fulfilled or satisfied prior to the date specified in such condition (if such condition specifies a date other than the Closing Date by which such condition must be satisfied); and

(k)    by Seller (<u>provided</u> that no Seller is then in material breach of any representation, warranty, covenant or other agreement contained herein) if it shall have reasonably determined that one or more conditions set forth in Article VIII has not been fulfilled or satisfied prior to the date specified in such condition (if such condition specifies a date other than the Closing Date by which such condition must be satisfied).

**Section 9.2.    Breakup Fee and Expense Reimbursement.**

(a)    If the Bankruptcy Court enters the Bidding Procedures Order and any party other than Purchaser is the Successful Bidder at the Auction, Seller shall pay (in cash) to Purchaser a breakup fee equal to 2.5 percent (2.5%) of the Cash Purchase Price (the "<u>Breakup Fee</u>"), *i.e.*, $250,000; <u>provided</u>, <u>however</u>, that the Breakup Fee shall (x) not be payable to Purchaser if a No Fee Event shall have occurred and (y) be payable solely from the proceeds of the Alternate Proposal. No Bidder other than Purchaser shall be entitled to a Breakup Fee.

(b)    Seller' obligation to pay the Breakup Fee pursuant to this Section 9.2 shall constitute an administrative expense (which shall be a super priority administrative expense claim senior to all other administrative expense claims) of Seller under Section 364(c) of the Bankruptcy Code.

**Section 9.3.    Effect of Termination or Breach.** If the transactions contemplated hereby are not consummated: (a) this Agreement shall become null and void and of no further force and effect, except (i) for this <u>Section 9.3</u>, (ii) for the provisions of <u>Section 11.1</u>, Section 11.7, Section 11.8, _____, Section 11.10 and Section 11.2 hereof, and (iii) that the termination of this Agreement for any cause shall not relieve any party hereto from any Liability which at the time of termination had already accrued to any other party hereto or which thereafter may accrue in respect of any act or omission of such party prior to such termination; and (b) the payment of the Breakup Fee and Expense Reimbursement, if required under Section 9.2, shall be the sole and exclusive remedy (as liquidated damages) of Purchaser.

**ARTICLE X. ADDITIONAL POST-CLOSING COVENANTS.**

**Section 10.1. Intentionally omitted.**

**Section 10.2. Intentionally omitted.**

**Section 10.3. Joint Post-Closing Covenant of Purchaser and Seller.** Purchaser and Seller jointly covenant and agree that, from and after the Closing Date, Purchaser and Seller will each use commercially reasonable efforts to cooperate with each other in connection with any action, suit, proceeding, investigation or audit of the other relating to (a) the preparation of an audit of any Tax Return of any Seller or Purchaser for all periods prior to or including the Closing Date and (b) any audit of Purchaser and/or any audit of any Seller with respect to the sales, transfer and similar Taxes imposed by the Laws of any state or political subdivision thereof, relating to the transactions contemplated by this Agreement. In furtherance hereof, Purchaser and Seller further covenant and agree to promptly respond to all reasonable inquiries related to such matters and to provide, to the extent reasonably possible, substantiation of transactions and to make available and furnish appropriate documents and personnel in connection therewith. All costs and expenses incurred in connection with this Section 10.3 referred to herein shall be borne by Purchaser.

**Section 10.4. Intentionally omitted**.

**Section 10.5. Tax Matters.**

(a)   Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use or other Taxes and recording charges which may be payable by reason of the sale of the Acquired Assets or the assumption of the Assumed Obligations under this Agreement or the transactions contemplated herein shall be borne and timely paid by Seller and Seller shall indemnify, defend (with counsel reasonably satisfactory to Purchaser), protect and save and hold Purchaser harmless from and against any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any such Taxes.

## ARTICLE XI. MISCELLANEOUS.

**Section 11.1. Expenses.**

(a)   Except as provided in Section 9.2 hereof, each party hereto shall bear its own costs and expenses, including attorneys' fees, with respect to the transactions contemplated hereby. Notwithstanding the foregoing, in the event of any action or proceeding to interpret or enforce this Agreement, the prevailing party in such action or proceeding (i.e., the party who, in light of the issues contested or determined in the action or proceeding, was more successful) shall be entitled to have and recover from the non-prevailing party such costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may incur in the pursuit or defense thereof.

(b)   The parties hereto agree that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees or commissions are ever asserted against Purchaser or Seller in connection with this transaction, all such claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify (with counsel reasonably satisfactory to the party(ies) entitled to indemnification) and hold the other harmless from and against any and all such claims or demands asserted by any Person, firm or corporation in connection with the transaction contemplated hereby.

**Section 11.2. Amendment.** This Agreement may not be amended, modified or supplemented except by a written instrument signed by Seller and Purchaser.

**Section 11.3. Notices.** Any notice, request, instruction or other document to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) on the date of transmission if sent by telex, telecopy, email or other wire transmission (with answer back confirmation of such transmission, if applicable), (c) upon delivery, if delivered by a nationally known commercial courier service providing next day delivery service (such as Federal Express), or (d) upon delivery, or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid. Unless another address is specified in writing, any notice, request, instruction or other documents given to the parties to this Agreement shall be sent to the addresses indicated below:

To Purchaser:

Name: _____

Attn: _____

Fax: _____

Email: _____

To counsel to Seller:

      Law Offices of Isaac Nutovic
      261 Madison Avenue, 26th Floor
      New York, NY 10016
      Attn: Isaac Nutovic
      inutovic@nutovic.com

with a required copy to counsel to Lender:

      Westerman Ball Ederer Miller Zucker & Sharfstein LLP
      1201 RXR Plaza
      Uniondale, NY 11556
      Attn: William C. Heuer
      wheuer@westermanllp.com

**Section 11.4. Waivers.** The failure of a party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same. No waiver by a party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing by Seller, in the case of a waiver by any Seller, or Purchaser, in the case of any waiver by Purchaser, and no waiver in any one or more instances shall be deemed to be a further or

15

continuing waiver of any such condition or breach of other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

**Section 11.5. Counterparts and Execution.** This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

**Section 11.6. Headings.** The headings preceding the text of the Articles and Sections of this Agreement and the Schedules are for convenience only and shall not be deemed part of this Agreement.

**Section 11.7. Submission to Jurisdiction.** THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

**Section 11.8. Governing Law; Jurisdiction.** This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of New York (without giving effect to the principles of conflicts of Laws or choice of Law thereof that would compel the application of the substantive Law of any other jurisdiction), except to the extent that the Laws of such State are superseded by the Bankruptcy Code or other applicable federal Law. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, any state or federal court having competent jurisdiction in Kings County, New York.

**Section 11.9. Binding Nature; Assignment.** Upon the approval of this Agreement by the Bankruptcy Court, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties (which shall not be unreasonably withheld or delayed), except: (a) the rights and interests of Seller hereunder may be assigned to a trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code; (b) this Agreement may be assigned to any entity appointed as a successor to Seller pursuant to a confirmed Chapter 11 plan; (c) this Agreement may be assigned to any Affiliate or Affiliates of Purchaser; and (d) as otherwise provided in this Agreement.

**Section 11.10. No Third Party Beneficiaries.** This Agreement is solely for the benefit of the parties hereto and nothing contained herein, express or implied, is intended to confer on any Person other than the parties hereto or their successors and permitted assigns, any rights, remedies, obligations, claims, or causes of action under or by reason of this Agreement.

**Section 11.11. Construction.** The language used in this Agreement will be deemed to be the language chosen by the parties to this Agreement to express their mutual intent, and no rule of strict construction shall be applied against any party. Any reference to any federal, state, local

or foreign Law shall be deemed also to refer to all rules and Laws promulgated thereunder, unless the context requires otherwise.

**Section 11.12.** Intentionally omitted.

**Section 11.13. Entire Understanding.** This Agreement, the Exhibits and the Schedules set forth the entire agreement and understanding of the parties hereto in respect to the transactions contemplated hereby Agreement, the Exhibits and the Schedules supersede all prior agreements, arrangements and understandings relating to the subject matter hereof and are not intended to confer upon any other Person any rights or remedies hereunder. All negotiations, considerations and representations between the parties have been incorporated herein. No course of prior dealing between the parties or their principals, agents or affiliates shall be relevant or admissible to supplement, explain or vary any of the terms of this Agreement. Acceptance of or acquiescence in a course of perfonnance rendered under this or any prior agreement between the parties or their principals, agents or affiliates shall not be relevant or admissible to determine the meaning of any of the tenns of this Agreement. No representations, understandings or agreements have been made or relied upon in the making of this Agreement other than those specifically set forth herein.

**Section 11.14. Closing Actions.** All deliveries, payments and other transactions and documents relating to the Closing shall be interdependent, and none shall be effective unless and until all are effective (except to the extent that the party entitled to the benefit thereof has waived satisfaction or performance thereof as a condition precedent to the Closing).

**Section 11.15. Conflict Between Transaction Documents.** The parties hereto agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other Transaction Document referred to herein, this Agreement shall govern and control; except that .

**Section 11.16. No Survival**. Except as specifically provided herein, the representations and warranties of Seller and Purchaser contained in this Agreement or in any instrument delivered in connection herewith shall not survive the Closing**.**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered on the date first above written.

**PURCHASER:**

Mironova LLC (or its assignee)

By: _____
Name:
Title:

**SELLER:**

1550 Bedford Ave LLC

By: _____
Name:
Title:

EXHIBIT D

**Exhibit D**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re                                              :              Chapter 11
                                                   :
1550 BEDFORD AVE LLC,                              :              Case No. 24-45433 (ESS)
                                                   :
                          Debtor.                  :
-------------------------------------------------------------------x

### ORDER, PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE (i) APPROVING BIDDING PROCEDURES AND TERMS AND CONDITIONS OF THE SALE OF DEBTOR'S REAL PROPERTY, (ii) SCHEDULING AUCTION DATE, (iii) APPROVING THE FORM AND MANNER OF NOTICE OF AUCTION AND SALE AND (iv) AND APPROVING CONTRACT OF <u>SALE SUBJECT TO HIGHER OR BETTER OFFERS</u>

Upon the Motion, dated February 13, 2025 (the "<u>Motion</u>"), of 1550 Bedford Ave LLC (the "<u>Debtor</u>"), seeking, among other things, entry of an order, pursuant to Sections 105(a) and 363 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) approving the bid procedures (the "<u>Bid Procedures</u>"); (ii) scheduling an auction and sale hearing; and (iii) approving the form and manner of notice of the auction and sale hearing, in connection with the Debtor's sale of collectively, the land, buildings and improvements located at 1550 Bedford Avenue, Brooklyn, New York, (collectively, the "<u>Property</u>"); and (iv) approving the agreement of sale (the "<u>Sale Agreement</u>"), dated February ___, 2025, between the Debtor and _____ (the "<u>Stalking Horse Purchaser</u>"), subject to higher and better offers as may emerge after the Auction pursuant to the Bid Procedures (the "<u>Purchaser</u>"), as more fully detailed in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and Amended Standing Order of Reference of the United States District Court for the Eastern District of New York, dated

1

Case 1-24-45433-ess    Doc 27    Filed 02/17/25    Entered 02/17/25 15:15:48

December 5, 2012 (Hon. Amon, C.J.); the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. § 1408 and 1409; and due and proper notice of the Motion having been provided to: (a) the Office of the United States Debtor for the Eastern District of New York; (b) counsel to DCP Bedford Graham LLC; (c) counsel to Mironova LLC (the "Stalking Horse Purchaser"); (d) counsel to the Stalking Horse Purchaser; (e) all known creditors and parties in interest; (f) all parties having filed a notice of appearance; (g) the Internal Revenue Service; (h) New York State Department of Taxation and Finance; (i) Office of the New York State Attorney General; (j) Corporation Counsel of the City of New York; and (k) any other parties entitled to notice pursuant to Bankruptcy Rule 2002; (collectively, the "Service Parties"); no other or further notice needing to be provided and an opportunity to object or be heard regarding the relief requested in the Motion as it relates to the proposed Bid Procedures, scheduling the Auction and approving the Agreement with the Stalking Horse Purchaser having been given; and no objections to the Motion as it relates to the foregoing having been filed or received; and the relief requested in the Motion being in the best interests of the Debtor's estate and its creditors; and the Court having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings held before the Court in the above-captioned case; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The findings and conclusions set forth herein constitute the Court's finding of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law

2

constitute findings of fact, they are adopted as such.

C.      Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

D.      The Court has jurisdiction over this Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(N).  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

E.      The statutory predicates for the relief sought in the Motion are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

F.      The proposed Auction and Sale Hearing Notice will constitute due, adequate and timely notice of the Bid Procedures, the Auction and the Sale Hearing in accordance with Bankruptcy Rule 2002.

G.      The Debtor has articulated good and sufficient reasons for approving the Bid Procedures.

H.      The Bid Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Real Property.

I.      The Stalking Horse Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the purchase of the Real Property and has engaged in extended arm's-length and good faith negotiations for a 2.5% breakup fee.  The Sale Agreement is the culmination of those efforts.

J.      The Debtor has demonstrated a compelling and sound business justification for authorization to enter into the Sale Agreement to establish the minimum bidding purchase price for the Property.

K.      Entry of this Order is in the best interests of the Debtor's estate, its

creditors, and other parties in interest, as the Debtor will solicit the highest and best offer on the Property in accordance with the Bid Procedures.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion, solely as it relates to: (i) the approval of Bid Procedures; (ii) scheduling the Auction and the Sale Hearing; (iii) approving the form and manner of notice of the Auction and Sale Hearing; and (iv) the Sale Agreement with the Stalking Horse Purchaser for a 2.5% breakup fee, subject to higher and better offers, as more fully set forth in the Motion, is hereby granted to the extent provided herein.

2.      The Bid Procedures are hereby authorized and approved in all respects and incorporated herein by reference. All proceedings related to: (i) the submission, consideration, qualification and acceptance of Qualified Bids; (ii) the conduct of the Auction; and (iii) the Identification and determination of the Successful Bid and the Successful Bidder and the Back-Up Bid and Back-Up Bidder shall be governed by and conducted in accordance with the Bid Procedures.

3.      Any individual or entity wishing to submit an offer for the Property must do so in accordance with the terms of the Bid Procedures. The failure in this Order to include specific reference to any particular provision, section or article of the Bid Procedures shall not diminish or impair the effectiveness of the Bid Procedures, it being the intent of this Court that the Bid Procedures be authorized and approved in their entirety and incorporated herein by reference.

4.      The Bid Procedures and the Notice of Auction and Sale Hearing are hereby approved in the forms annexed hereto as <u>Exhibits A and B</u>.

5.      The objections, if any, to entry of this Order, that have not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are

overruled in their entirety.

6.      The general terms and conditions of the sale of the Property, substantially in the form contained in the Sale Agreement (including the 2.5% Breakup Fee), are authorized and approved in their entirety and are incorporated herein by reference.

7.      The Debtor may conduct the Auction in accordance with the Bid Procedures.

8.      The Auction, *if required*, shall commence at 11:00 a.m. (Prevailing Eastern Time) on April 8, 2025, at the Law Offices of Isaac Nutovic, 261 Madison Avenue, 26th Floor, New York, New York 10016.

9.      Objections, if any, to the sale of the Property and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Isaac Nutovic, Esq., counsel to the Debtor, 261 Madison Avenue, 26th Floor, New York, New York 10016; (b) William C. Heuer, Esq., Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, 1201 RXR Plaza, Uniondale, NY 11556; (c) Leib Lerner, Esq., Alston & Bird, 90 Park Avenue, New York, New York 10016, (d) Office of the United States Trustee Alexander Hamilton Custom House, One Bowling Green, Room 510 New York, NY 10004 Attn: Shannon Scott, Esq.; so as to be actually received by 5:00 p.m. (Prevailing Eastern Time) on _____.

10.     The Court shall conduct the Sale Hearing and consider any unresolved objections to the Sale, including the Debtor's selection of a Successful Bidder other than the Stalking Horse Purchaser at the Auction, on April ___, 2025 at _____ a..m. (Prevailing Eastern Time), or at such other time as may be ordered by the Court.

11.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be effective immediately

and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

12.     This Court shall retain exclusive jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.