**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
In re:

1550 BEDFORD AVE LLC,

                   Debtor.

--------------------------------------------------------x

Chapter 11

Case No.  24-45433 (ess)

## PLAN OF LIQUIDATION FOR 1550 BEDFORD AVE, LLC

---

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.  THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.

---

LAW OFFICES OF ISAAC NUTOVIC
261 Madison Avenue
26th Floor
New York, N.Y. 10016

*Attorneys for Debtor,*
1550 Bedford Ave, LLC

Dated:  March 6, 2025

## PLAN OF LIQUIDATION FOR 1550 BEDFORD AVE LLC

## INTRODUCTION

This Plan of Liquidation undertakes to resolve all secured claims, administrative and other priority claims, and unsecured claims, as well as all equity interests in the Debtor. The Debtor believes that distribution pursuant to the terms of this Plan will produce for creditors more than they would receive if the Chapter 11 case was to be converted and the assets of Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code and the proceeds distributed according to the priorities and in the manner prescribed by the Bankruptcy Code. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtor's history, business, property, and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL CREDITORS ARE ENCOURAGED TO READ THE PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

**A.** **Defined Terms**.

The following terms when used in the Plan and in the accompanying Disclosure Statement shall, unless the context otherwise requires, have the following meanings, respectively:

1.1.    *"Administrative Claim"* shall mean a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, for costs or expenses of administration of the Debtor's Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtor or preserving the Debtor's estate, and any and all fees and expenses of Professionals retained in the Debtor's Estate to the extent allowed by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code.

1.2.    *"Administrative Claims Bar Date"* shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be an Allowed Claim. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

1.3.    *"Affiliate"* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4.    *"Allowed Administrative Claim"* shall mean all or that portion of any Administrative Claim that has been or becomes an Allowed Claim by Order of the Bankruptcy Court.

1.5.    *"Allowed Claim"* or **"***Allowed [       ] Claim"* means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim

is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

1.6.     "*Asset Sale Transaction*" means the sale of the Debtor's assets under this Plan..

1.7.     "*Avoidance Actions*" means any and all Causes of Action which a trustee, debtor in possession, the estate or other appropriate party in interest, including the Debtor as assignee of the Debtor, may assert under Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

1.8.     "*Ballot*" shall mean the form(s) distributed to each Holder of a Claim in an impaired Class entitled to vote hereon, on which is to be indicated the acceptance or rejection of the Plan.

1.9.     "*Ballot Date*" shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Balloting Agent.

1.10.     "*Balloting Agent*" means Law Offices of Isaac Nutovic, counsel to the Debtor.

1.11.     "*Bankruptcy Code*" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all amendments thereto which are applicable to the Debtor's Chapter 11 case.

1.12.     "*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the Eastern District of New York, Brooklyn Division, or such other ccourt as may hereafter have jurisdiction over an action with respect to the Chapter 11 Case.

1.13.     "*Bankruptcy Rules*" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28, United States Bankruptcy Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28, United States Bankruptcy Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Debtor's Chapter 11 case or proceedings therein, as the case may be.

1.14.    "*Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed.

1.15.    "*Business Day"* shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in New York, New York are required or authorized to close.

1.16.    "*Cash"* shall mean currency of the United States of America, or checks issued in accordance with this Plan payable in such currency.

1.17.    "*Cash Consideration*" means any proceeds paid or payable in Cash, if any, by a Purchaser in connection with the Asset Sale Transaction; provided, however, that, for the avoidance of doubt, Cash Consideration includes any Cash or Cash equivalents returned (whether before or after the Effective Date) to the Debtor or the Estate, including (a) the return of any deposits of Cash or Cash equivalents and (b) the release of Cash or Cash equivalents used to collateralize any of the Debtor's insurance policies or utility contracts.

1.18.    "*Causes of Action"* means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

1.19.    "*Chapter 11 Case*" means when used with reference to the Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

1.20.    "*Claim"* shall have the meaning set forth in Section 101(5) of the Bankruptcy Code, and any Cause of Action or liability asserted against the Debtor.

1.21.    "*Claims Register*" means the official register of Claims maintained by the Clerk of the Bankruptcy Court.

1.22.    "*Claims Reserve*" means the amount required to be available for distribution to the Holders of a Claim as to which the Debtor or DCP has interposed an objection.

1.23.    "*Class"* shall mean such classes of Claims or Interests which are substantially similar to the other Claims or Interests in such class as classified pursuant to the Plan.

1.24.    "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the official docket maintained by such Clerk of the Bankruptcy Court in the Debtor's Chapter 11 case, within the meaning of Bankruptcy Rules 5003 and 902.

1.25.    "*Confirmation Order*" shall mean the order of the Bankruptcy Court, *inter alia*, confirming the Plan in accordance with the provisions of the Bankruptcy Code and which is in form and substance satisfactory to the Debtor, in its sole discretion.

1.26.    *"Confirmation Payment Amount"* means the amount equal to the sum of (i) all Allowed Administrative Claims (other than professional fee claims of the Law Offices of Isaac Nutovic which exceed $100,000) (ii) all statutory fees (iii) Allowed Priority Claims (iv) Senior Secured Claims and (v) $100,000.00 for the benefit of Allowed Class 4 General Unsecured Claims ; and (vi) the amounts due under the Plan for the holder of any Claim as to which an objection has been interposed).

1.27.    *"Creditor"* shall have the meaning as set forth in Section 101(1) of the Bankruptcy Code.

1.28.    *"DCP"* means DCP Bedford Graham LLC.

1.29.    "*DCP Released Parties*" means each of the following solely in their capacity as such: (a) DCP, including its members and interest holders (in such capacity); (b) DCP's professionals retained in connection with this Chapter 11 case including its attorneys, accountants, and advisors (solely in such capacity, and solely with respect to this Chapter 11 case).

1.30.    *"Debtor"* means 1550 Bedford Ave, LLC, debtor and debtor in possession.

1.31.    *"Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.32.    *"Disclosure Statement"* shall mean the Disclosure Statement, dated the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.33.    "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

1.34.    *"Disputed Claim"* shall mean a Claim against the Debtor which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

1.35.    *"Distribution"* shall mean the distribution to the Holders of Allowed Claims in accordance with the terms of the Plan.

1.36.    "*Distribution Agent*" means the Debtor, or any other Entity the Debtor selects to make or facilitate Distributions that are to be made pursuant to the Plan.

1.37.    *"Distribution Date"* shall mean the date on which the initial Distribution(s) under the Plan are made, which date shall be not less than fourteen (14) days following the Effective Date, or as soon as practicable thereafter as determined by the Debtor.

1.38.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive Distributions hereunder and shall be the Effective Date or such other date as may be designated by the Bankruptcy Court in the Confirmation Order.

1.39.    "*Effective Date*" shall be the later of: (i) the fifteenth (15th) calendar day following the Confirmation Date, (ii) the expiration of any and all applicable time periods within which such order may be appealed by any party or, if such order shall be appealed by any party, the date that any such appeal(s) has/have been dismissed or denied and that no further appeal may be taken, (iii) the date on which all conditions to effectiveness of the Plan have been satisfied or waived in accordance with the terms of the Plan and (iv) the date of the closing of the Asset Sale Transaction.

1.40.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.41.    "*Estate*" means, as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.42.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Clerk of the Bankruptcy Court.

1.43.    "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

1.44.    "*General Unsecured Claim*" means any Claim, other than (a) an Administrative Claim, (b) a Secured Claim, (c) a Senior Secured Claim, (d) a Priority Claim, or (e) a Junior Secured Claim.

1.45.    "*Holder*" means an Entity holding a Claim or Interest, as applicable.

1.46.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.47.    "*Interest(s)*" means any and all equity interests, ownership interests or shares in the Debtor issued by the Debtor prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, membership and other interests in a limited liability company, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation

rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from any of the foregoing.

1.48.    *"Junior Secured Claim"* means any Allowed Secured Claim (other than claims arising under the Prepetition Mortgage) with a lien priority junior to that of the Prepetition Mortgage.

1.49.    *"Lien"* shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by any party with standing to bring such a challenge.

1.50.    *"Manager"* shall mean the manager of the Debtor, Mordy Steinfeld.

1.51.    *"Mortgaged Property"* means collectively, (a) that certain property located at 1550 Bedford Avenue, Brooklyn, New York, and all of the Debtor's Property related thereto or associated therewith.

1.52.    *"Mortgaged Property Broker"* means Avison Young-New York LLC the commercial real estate brokerage firm engaged by the Debtor to market and sell the Mortgaged Property per the terms of the Mortgaged Property Sale Procedures, and otherwise in accordance with the terms of the Mortgaged Broker Engagement Agreement.

1.53.    *"Mortgaged Property Broker Engagement Agreement"* shall mean that certain engagement agreement, dated as of January 21, 2025 that shall govern the Debtor's engagement of the Mortgaged Property Broker.

1.54.    *"Mortgaged Property Sale Procedures"* shall mean the sale and competitive bid/auction procedures to be implemented by the Mortgaged Property Broker in conjunction with the Debtor, in pursuit of a sale or other disposition of the Mortgaged Property in accordance with the Plan,.

1.55.    *"Mortgaged Property Sale Proceeds"* shall mean the Cash or other proceeds realized by the Estate from a sale or other disposition of the Mortgaged Property in accordance with the terms of this Plan.

1.56.    *"Order"* shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court or other court of competent jurisdiction.

1.57.    *"Person"* shall mean an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

1.58.    *"Petition Date"* shall mean December 31, 2024, the date on which the Debtor commenced the Chapter 11 Case.

1.59.    *"Plan"* shall mean this Plan of Liquidation, as same may be amended or modified from time to time in accordance with the terms hereof or in accordance with the Bankruptcy Code.

1.60.    *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code, and the Bankruptcy Rules) to be Filed by the Debtor no later than seven (7) days before the Confirmation Date, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement.

1.61.    "*Prepetition Mortgage*" means that certain first mortgage recorded against the Mortgaged Property by the Debtor as the Holder of the Class 1 Secured Claim.

1.62.    "*Priority Claim*" shall mean an Allowed Claim which is entitled to priority pursuant to Section 507 of the Bankruptcy Code other than Administrative Claims and Priority Tax Claims.

1.63.    *"Professional"* means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

1.64.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been previously paid.

1.65.    *"Property"* means all assets or property of the Debtor's estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in Section 541 of the Bankruptcy Code.

1.66.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Case.

1.67.    *"Pro Rata Share"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

1.68.    "*Purchaser*" means the Stalking Horse Bidder, or such other purchaser under the Asset Sale Transaction which has been approved by the Bankruptcy Court as having submitting the highest and/or best offer for the Mortgaged Property in accordance with the Mortgaged Property Sale Procedures and this Plan, together with its successors and permitted assigns (including any and all of its wholly-owned Affiliates to which it assigns any of its rights or obligations).

1.69.    "*Releasing Parties*" means, collectively, and in each case solely in its capacity as such: (a) the Debtor and its members, interest holders, partners, subsidiaries, predecessors, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, contractors, representatives, management companies, advisors, and other professionals, in each case in their capacity as such, and (b) each claimant with a Class 4 General Unsecured Claim that votes in favor of confirmation of this Plan as described in Article 4.05 below.

1.70.    *"Representative"* shall mean with respect to a particular person, its affiliates, and any director, officer, member, equity holder, owner, manager, employee, agent, consultant, advisor, and/or

other representative of that person and/or its affiliates, including, but not limited to, legal counsel, accountants and financial advisors.

1.71. *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

1.72. *"Security Interest"* shall mean "security interest" as set forth in section 101(51) of the Bankruptcy Code.

1.73. "*Senior Secured Claim*" means any Allowed Secured Claim (other than claims arising under the Prepetition Mortgage) with a lien priority senior to, or equal to, that of the Prepetition Mortgage.

1.74. *"Stalking Horse Agreement"* means that certain Purchase and Sale Agreement executed by the Stalking Horse Bidder in the form annexed hereto as <u>Exhibit 2</u> hereto, providing for, among other things, the sale of the Mortgaged Property to the Stalking Horse Bidder, which agreement shall be subject to solicitation of higher and/or better offers in accordance with the Mortgaged Property Sale Procedures and otherwise in accordance with this Plan.

1.75. *"Stalking Horse Bidder"* means the person or entity named in the Mortgaged Property Sale Procedures as making the opening bid.

1.76. *"U.S. Trustee"* shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 2.

1.77. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

**B.**    **Rules of Interpretation**.

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the

8

rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Debtor or the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

       **C.**    <u>**Computation of Tim**</u>e. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

       **D.**    <u>**Governing Law**</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

       **E.**    <u>**Reference to Monetary Figures**</u>. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

       **F.**    <u>**Controlling Document**</u>. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

       **G.**    <u>**Exhibits**</u>. All Exhibits to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED<br>ADMINISTRATIVE CLAIMS

       2.01    <u>Generally</u>.  Administrative Claims and Priority Tax Claims are not classified in this Plan, and have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, and release of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.02    <u>Administrative Claims</u>.  Administrative Claims include Claims under section 503(b) of the Bankruptcy Code that are entitled to priority under section 507(a)(2) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtor or preserving the Estate, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331 or 503 of the Bankruptcy Code.

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Case or a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash from the Priority Claims Reserve the unpaid portion of its Allowed Administrative Claim on the latest of:  (a)  the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; <u>provided</u>, that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

Except as otherwise provided in this Article II and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  ***Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its Property and such Administrative Claims shall be deemed discharged as of the Effective Date.***  Objections to such requests, if any, must be Filed and served on the Debtor and the requesting party by the deadline established for such objections under Section 8.01 of the Plan.  The failure to object to Confirmation by a Holder of an Allowed Administrative Claim or Priority Tax Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

Any amounts remaining in the Priority Claims Reserve after payment of all Allowed Administrative Claims and all Allowed Priority Claims shall promptly be transferred to the Debtor without any further action or order of the Bankruptcy Court.

2.03    <u>Professional Compensation</u>. All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than twenty (20) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Priority Claims Reserve up to the full Allowed amount thereof.

2.04    <u>Statutory Fees</u>. All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, including those fees arising from the sale of the Property contemplated by this Plan, shall be paid by the Debtor from the Mortgaged Property Sale Proceeds.  On

and after the Effective Date, the Debtor shall pay any and all such fees when due and payable, and the Debtor shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE III**

**DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

**A.**      **Summary of Classification**.

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.  All Claims against and Interests in the Debtor, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all claims arising from transactions with the Debtor or rejection of executory contracts and all Interests arising from the ownership of the stock or other membership interests in the Debtor, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan.

**B.**      **Class Identification**.

The Claims and Interests, other than Administrative Claims and Priority Tax Claims, are hereby classified as follows:

| Class | Claim or Interest | Status | Voting Rights |
|:-----:|-------------------|:------:|:-------------:|
| 1 | DCP Secured Claim | Impaired | Entitled to Vote |
| 2 | Priority Claims | Unimpaired | Deemed to Accept |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Unsecured Claims/Junior Lien Claims | Impaired | Entitled to Vote |
| 5 | Interests | Impaired | Deemed to Reject |

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Class of Interests, are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversies.

# ARTICLE IV

## TREATMENT OF IMPAIRED CLAIMS
## AND INTERESTS UNDER THE PLAN

4.01    <u>Generally</u>.  Subject to Article VII hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

4.02    <u>Class 1</u> – <u>DCP Secured Claim</u>.  The Class 1 Secured Claim is Impaired and entitled to vote on the Plan.

DCP shall be deemed to hold an Allowed Secured Claim in the aggregate amount of $42 million to the extent that the value of the Mortgaged Property supports it, plus reasonable legal fees and expenses accruing after the Petition Date in accordance with the prepetition loan documents identified in the DCP proof of claim.

The Class 1 Allowed Secured Claim shall be treated, in the alternative, as provided below:

(a)    In the event that, following implementation of the Mortgaged Property Sale Procedures, a credit bid by DCP is determined to be the highest and/or best offer for the Mortgaged Property in accordance with the Mortgaged Property Sale Procedures, on the Effective Date, or as soon thereafter as may be practicable, and in full settlement and satisfaction of the Allowed Class 1 Secured Claim, the fee title interest in the Mortgaged Property shall be sold, transferred, conveyed and assigned to DCP, with any such sale, transfer, conveyance and assignment being subject to the Prepetition Mortgage as of the Effective Date and otherwise being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, *provided* that  DCP shall pay the Debtor, on the Effective Date, cash equal to the Confirmation Payment Amount; or

(b)    In the event that, following implementation of the Mortgaged Property Sale Procedures, a Purchaser (other than DCP) is determined to have submitted the highest and/or best offer for the Mortgaged Property, on the Effective Date, or later as specified below, the Debtor shall: (i) sell, transfer, convey and assign the Mortgaged Property to the successful Purchaser, with such sale, transfer, conveyance and assignment being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature, and (ii) shall pay from the Mortgaged Property Sale Proceeds as follows:

i.    (A) all Allowed Administrative Claims in full (other than professional fee claims of the Law Offices of Isaac Nutovic which exceed $100,000) (B) all statutory fees in full (C) all Allowed Priority Claims in full (D) all Allowed Senior Secured Claims in Class 3 in full (E) all  Allowed Class 4 Claims (who vote in favor of the Plan) a Pro Rata Share  of $100,000.00 (in the aggregate) (a portion of which may be reserved for potential amounts due under the Plan for the holder of any Class 4 Claim as to which an objection has been interposed); and (F) up to $14 million to DCP in partial satisfaction of its Allowed Class 1 Claim;

ii.    To the extent any funds remain from the Mortgaged Property Sale Proceeds after the above payments are made, 50% of the remainder shall be paid to DCP and the balance distributed as follows: (A) a Pro Rata Share to holders of Allowed Class 4 Claims (who voted in favor of the Plan) until such Claims are paid in full (B) to DCP until its Class 1 Allowed Claim is paid in full (C) a Pro Rata Share to holders of Allowed Class 4 Claims who did not vote in favor of the Plan until such Claims are paid in full,  and then (D) to the Class 5 Equity Interest Holder

In accordance with Sections 363(k) and 1129 of the Bankruptcy Code, the Holder of the Class 1 Allowed Secured Claim shall retain its right to credit bid the full amount of its Allowed Secured Claim in connection with any such Asset Sale Transaction. To the extent that DCP holds an Allowed General Unsecured Claim, DCP shall be deemed to have waived its right to share in any distribution made to Class 4 General Unsecured Claims.

In the event the Purchaser so requests, on the Effective Date, DCP shall assign to an entity designated by the Purchaser all of its right title and interest in any mortgage or lien on the Property and in any associated documents, provided that DCP shall not be required to assign or relinquish any rights to distributions under this Plan.

4.03    Class 2 –Priority Claims.   Class 2 is Unimpaired.   Holders of Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

Allowed Priority Claims shall be paid, in Cash on the Effective Date, except to the extent the Holder of an Allowed Priority Claim agrees otherwise.

4.04    Class 3 – Senior Secured Claims.  Class 3 is Unimpaired.  Holders of Allowed Class 3 Claims are conclusively presumed to have accepted the Plan. Holders of Class 2 Claims are conclusively presumed to have accepted the Plan  under section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

Class 3 consists of Allowed Senior Secured Claims against the Debtor. In full and final satisfaction of each Allowed Senior Secured Claim, except to the extent that a Holder of an Allowed Senior Secured Claim agrees to a less favorable treatment, each Holder thereof will receive payment in full in Cash on the Effective Date or such other treatment rendering such Claim Unimpaired.

4.05    Class 4 - General Unsecured Claims.  Class 4 is Impaired.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.  Class 4 Claims entitled to vote can elect whether to accept a prioritized distribution in exchange for becoming a Releasing Party and granting to the DCP Released Parties the release of all claims described in Article IX below.  Specifically:

Each Holder of an Class 4 Allowed General Unsecured Claim **_that votes in favor of the Plan_** shall receive in full and final satisfaction, compromise, settlement, release, and discharge of each such Allowed Claim: (a) its Pro Rata Share of any funds to which Class 4 is entitled as a result of section 4.02(b) of this Plan 30 days after the Effective Date.

Each Holder of an Class 4 Allowed General Unsecured Claim **_that votes to reject the Plan_** shall receive in full and final satisfaction, compromise, settlement, release, and discharge of each such Allowed Claim: (a) its Pro Rata Share of any funds remaining for distribution after the DCP Allowed Secured Claim is paid in full according to the priority in distribution waterfall provided for in the Bankruptcy Code or applicable state law.

4.06    Class 5 - Interests.  Class 5 is Impaired.  The Holders of Interests is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

On the Effective Date: (1) any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtor or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtor giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtor and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be fully released, settled, and compromised. However, in the event that the proceeds of the Asset Sale Transaction are sufficient to pay all Allowed Claims in full, any remaining proceeds will be distributed to the Interest Holder.

## ARTICLE V

## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

5.01    General Settlement of Claims.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtor and Debtor may compromise and settle Claims against the Debtor and the Estate and Causes of Action against other Entities.

5.02    Marketing and Sale of the Mortgaged Property. The sole means for executing the Plan is through an auction sale of the Mortgaged Property. The Plan is grounded in the determination by the Debtor that maximum recoverable value, and the creation of the funds required to make the Distributions provided for under the Plan is best achieved through a prompt and orderly implementation of a marketing process by which the Mortgaged Property is sold at auction following exposure to the marketplace. Toward that end, the Debtor has engaged the Mortgaged Property Broker to implement the Mortgaged Property Sale Procedures in the period leading up to the Confirmation Hearing, with a view toward (i) conducting an auction before the Confirmation Hearing Date (ii) obtaining approval of a sale of the Mortgaged Property on the Confirmation Hearing Date and consummating an Asset Sale Transaction within 45 days of the entry of an order approving the sale to a Purchaser.

The Debtor has established a price floor for by entering into the Stalking Horse Agreement with Stalking Horse Bidder.  The Stalking Horse Agreement provides that in the event no higher and/or better offer for the Mortgaged Property is identified by the Mortgaged Property Broker following implementation of the Mortgaged Property Sale Procedures, the Mortgaged Property will be sold, transferred, conveyed and assigned to the Stalking Horse Bidder, with such sale, transfer, conveyance and

assignment being subject to the Prepetition Mortgage but otherwise being free and clear of any and all other existing Liens, Claims, encumbrances and interests of whatever kind or nature. (the Prepetition Mortgage will be assigned to an entity designated by the Stalking Horse Bidder. DCP is likely to provide financing to the Stalking Horse Bidder to consummate the Asset Sale Transaction. The Mortgage Property Procedures will provide that any Purchaser will have the option of taking the Property subject to the Prepetition Mortgage and having that mortgage along with all associated documents assigned to an entity to be designated by it.

The Mortgaged Property Broker, working in conjunction with the Debtor, shall implement the Mortgaged Property Sale Procedures in connection with the solicitation of bids for the Mortgaged Property and the conduct of any competitive bid auction in connection therewith.

The Confirmation Order shall provide that upon the occurrence of the Effective Date, the Debtor shall be vested with all requisite rights and powers to consummate the Asset Sale Transaction for the Mortgaged Property.

Any fees, costs, or expenses incurred by the Mortgaged Property Broker in connection with the marketing and sale of the Mortgaged Property, including any fees and/or commissions earned by the Mortgaged Property Broker and/or expenses incurred in implementing the Mortgaged Property Sale Procedures, shall be paid from the net proceeds realized upon a sale of the Mortgaged Property in such amounts as shall be provided by the Mortgaged Property Broker Engagement Agreement. The Plan further contemplates that upon its determination of the highest and/or best offer for the Mortgaged Property following implementation of the Mortgaged Property Sale Procedures, the Confirmation Order shall authorize and direct the Debtor to consummate a sale of the Mortgaged Property to the Purchaser offering the highest or best offer for the Mortgaged Property, which may be the Stalking Horse Bidder under the Stalking Horse Agreement.

5.03    <u>Corporate Action</u>. The entry of the Confirmation Order shall constitute authorization for the Debtor and/or the Debtor, as applicable, to take or to cause to be taken on behalf of the Debtor all limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, including, without limitation, the execution and delivery of any documents or instruments of transfer necessary, appropriate or incident to the implementation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court upon confirmation of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders, members, or directors of the Debtor. On the Effective Date, the Debtor and the Debtor are authorized, as attorneys in fact for the Debtor, to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Plan Supplement, in the name and on behalf of the Debtor.

5.05    <u>Transfer of Records</u>. After confirmation, and before the Effective Date, the Debtor's pre-Confirmation management shall identify all of the Debtor's books and records and arrange for them to be readily available to the Debtor for delivery to the Debtor. Such actions shall not result in the destruction or waiver of any applicable privilege pertaining to such books and records.

5.06    <u>Establishment of Claims Reserve</u>. Upon the occurrence of the Effective Date, the Debtor shall establish the Claims Reserve for payment of all Claims as to which an objection has been interposed.

5.07    <u>Dissolution of the Debtor</u>. The Confirmation Order shall authorize: (a) the dissolution of the Debtor; and (b) the filing of a certificate of dissolution (or its equivalent) with the secretary of state or similar official of each jurisdiction of incorporation of the Debtor at such time as shall be determined

appropriate by the Debtor. Until such time as the Debtor has been dissolved the Debtor shall continue to be managed by its Managing Member, Yoel Goldman.

      5.08   <u>Exemption from Certain Transfer Taxes and Fees</u>. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Mortgaged Property pursuant to the Asset Sale Transaction and this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**ARTICLE VI**

**TREATMENT OF EXECUTORY<br>CONTRACTS AND UNEXPIRED LEASES**

      6.01   <u>General Assumption and Assignment</u>. In order to facilitate the sale, transfer and conveyance of the Mortgaged Property, the Plan constitutes and incorporates a motion by the Debtor, in accordance with Section 365 of the Bankruptcy Code, (a) to assume and assign to the Purchaser (or its designee) those executory contracts and unexpired leases that are designated and identified for assumption by the Purchaser as part of the Asset Sale Transaction, a schedule of which contracts/leases shall be included in the Plan Supplement. The Confirmation Order shall represent and reflect an order of the Bankruptcy Court approving such assumptions and assignments or rejection as of the Effective Date. In the event any counterparty to an executory contract and/or unexpired lease believes that there is outstanding any pre-petition or post-petition monetary amount under such contract or lease that must be cured as a condition to assumption and assignment under Section 365 of the Bankruptcy Code, any such cure claim must be filed with the Bankruptcy Court and served on counsel to the Debtor not later than seven (7) days prior to the Confirmation Hearing.

      6.02   <u>General Rejection</u>. The Plan also constitutes and incorporates a motion by the Debtor, in accordance with Section 365 of the Bankruptcy Code, to reject any executory contract and/or unexpired lease that is not specifically designated and identified for assumption by the Purchaser as part of the Asset Sale Transaction, a schedule of which contracts/leases shall be included in the Plan Supplement.

      6.03   <u>Rejection Damage Claims</u>.  Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (2) 30 days after notice of any rejection that occurs after the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtor or the Debtor, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary**.  Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

6.04    Reservation of Rights. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the schedule of assumed/rejected Executory Contracts and Unexpired Leases, or anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

6.05    Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Executory Contract or Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

7.01    Timing and Calculation of Amounts to Be Distributed. Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.02    Delivery of Distributions in General. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VII, shall be made to Holders of record as of the Distribution Record Date by the Debtor:  (1) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtor has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Case on such Holder's behalf.  Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  Neither the Debtor nor Debtor shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

7.03    Unclaimed Property.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within 60 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Debtor, or their respective properties or assets.  In such cases, any Cash or other property held by the Debtor on account of such claims for undeliverable or unclaimed distributions, shall become the property of Debtor notwithstanding any federal or state escheat laws to the contrary. The Debtor and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder.

17

7.04    <u>Compliance With Tax Requirements</u>. In connection with the Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and Debtor each reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including the Priority Claims Reserve) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

7.05    <u>Fractional Cents</u>. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.06    <u>Payments of Less than One Hundred Dollars</u>.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim or Interest would be less than one hundred dollars ($100.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Debtor shall not be required to make such payment.

7.07    <u>Setoffs</u>.   Except as otherwise provided for herein, the Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor or its estate of any Claim it may have against the Creditor.

7.08    <u>Allocations</u>. Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

7.09    <u>No Postpetition Interest on Claims</u>. Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

7.10    <u>Claims Reserve</u>.  On the Effective Date, the Debtor shall establish the Claims Reserve by depositing Cash in the amount which may be due under the Plan for the holder of any Claim as to which an objection has been interposed.  If all or any portion of a such Claim shall become a Disallowed Claim, then the amount on deposit in the Claims Reserve attributable to such surplus or such Disallowed Claim, shall promptly be transferred to DCP without any further action or order of the Court.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS AND INTERESTS

8.01    Objections to Claims.  From and after the Effective Date only the Debtor and DCP shall have authorization to file and/or prosecute objections to Claims and/or Interests. Objections to Claims shall be filed with the Bankruptcy Court and served upon the affected Creditor(s) or Interest Holder(s) no later than thirty (30) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Debtor and/or DCP without the requirement of prior notice or a hearing..

8.02    No Distribution Pending Allowance. Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been determined by a Final Order of the Bankruptcy Court.

8.03    Reserve for Allocated Distributions. The Debtor shall withhold from the property to be distributed under the Plan an amount which shall be sufficient to be distributed on account of such Disputed Claim(s). As to any Disputed Claim, upon a request for estimation by the Debtor, and/or Debtor, as the case may be, the Bankruptcy Court shall determine what amount is sufficient to withhold.

8.04    Distributions after Allowance.  Payments and Distributions to each Holder of a Disputed Claim, to the extent such Disputed Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the subject Claim belongs.

8.05    Treatment of Contingent, Disputed and Unliquidated Claims. Until such time as a contingent, unliquidated or Disputed Claim becomes fixed, liquidated, absolute, and Allowed, such claim shall be treated as a Disputed Claim for purposes related to estimations, allocations, and Distributions under the Plan.

8.06    Preservation of Rights. Except to the extent that any Claim is Allowed during the Chapter 11 cases or expressly by this Plan, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtor, the Debtor, or the Debtor to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor or the Debtor with respect to any Claim or Interest, including, but not limited to, all rights of the Debtor and/or the Debtor to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

8.07    Estimation of Claims. Before, on, or after the Effective Date, the Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim,

19

such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor and Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.08    <u>Disallowance of Claims</u>. Except as otherwise provided herein or as agreed to by the Debtor, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

8.09    <u>Amendments to Claims</u>. On or after the Confirmation Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtor, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

## ARTICLE IX

## **SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

9.01    <u>Compromise and Settlement of Claims, Interests, and Controversies</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtor may compromise and settle any Claims and Causes of Action against other Entities.

9.02    <u>Discharge of Claims and Termination of Interests</u>. To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan: (a) the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of any and all Claims, Interests, and Causes of Action against the Debtor of any nature whatsoever including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such liability relates to services performed by employees of the Debtor prior to the Effective Date and that arises from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any interest accrued on Claims or Interests

from and after the Petition Date, and all other liabilities against, liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, (b) the Plan shall bind all Holders of Claims and Interests, (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, and (d) all Entities shall be precluded from asserting against the Debtor, the Estate, their successors and assigns, and its assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, in each case regardless of whether or not:  (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; (iii) the Holder of such a Claim or Interest has accepted, rejected or failed to vote to accept or reject the Plan; or (iv) any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.  Any default by the Debtor with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

9.03    Term of Injunctions or Stays. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.04    Injunction. The following provisions shall apply and shall be fully set forth in the Confirmation Order.

**(a) <u>Injunctions Against Interference with Consummation or Implementation of Plan</u>. All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor or the Estate with the intent or effect of interfering with the consummation or implementation of this Plan or the transfers, payments or Distributions to be made hereunder.**

**(b) <u>Plan Injunction</u>. Except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (ii) the creation, perfection or enforcement of any Encumbrance of any kind; (iii) the commencement or continuation of any action, employment of process or act to collect, offset or recover any Claim or Cause of Action satisfied, released or enjoined under this Plan; and/or (iv) the assertion of any right of setoff, counterclaim, exculpation, or subrogation of any kind, in each case against the property of the Debtor or the Estate to the fullest extent authorized or provided by the Bankruptcy Code.**

**(c) <u>No Bar to Claims Against Third Parties</u>. Holders of Claims or Interests against the Debtor are not barred or otherwise enjoined by the Plan from**

pursuing any recovery against Persons that are not the Debtor other than the DCP Released Parties in accordance with the terms set out herein in Article IX of this Plan.

**(d) Exculpation for Debtor and Estate Professionals and DCP and its Professionals.**

To the full extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor, DCP, and each of their current members, managers, officers employees and professionals, their respective officers, directors, employees and professionals (including professional firms and individuals within such firms), shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, funding, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for (i) acts or omissions as a result of willful misconduct or gross negligence and (ii) liability for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality, (c) laws regarding the regulation of securities administered by the SEC or (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any Claim or liability released pursuant to the Plan.

**(e) DCP Release** Effective as of the Effective Date, to the fullest extent permitted by applicable law, and for good and valuable consideration including that which is set out in Article 4.02 above, the adequacy of which is hereby confirmed, each DCP Released Party is deemed released by each and all of the Releasing Parties from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any or all of the forgoing parties could have been legally entitled to assert against the DCP Released Parties based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, and/or the Mortgaged Property.

**ARTICLE X**

**CONDITIONS TO EFFECTIVENESS OF THE PLAN**

10.01    Conditions Precedent to the Effective Date. It shall be a condition to the effectiveness of the Plan that the following shall have been satisfied (or waived pursuant to the provisions of Section 11.02 hereof):

The Confirmation Order, shall have been duly entered and in full force and effect.

10.02    Waiver of Conditions. The Debtor, in its sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Section 11.01 above. The failure of the Debtor to satisfy or waive such condition may be asserted by the Debtor regardless of the

22

circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor).  The Debtor reserves the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

10.03    <u>Substantial Consummation</u>. "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**ARTICLE XI**

**<u>MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN</u>**

11.01    <u>Modification of Plan</u>.  Modifications of the Plan may be proposed in writing by the Debtor at any time before Confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code. A Holder of a claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**ARTICLE XII**

**<u>RETENTION OF JURISDICTION</u>**

12.01    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of or related to the Chapter 11 Case and the Plan, including jurisdiction to:

1.    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.    Resolve any matters related to:  (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) amending, modifying, or supplementing, after the Effective Date, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

23

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including, without limitation, arising under or in connection with the Asset Sale Transaction;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims entitled to priority pursuant to

section 507 of the Bankruptcy Code;

19.    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.    Hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

21.    Enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Case;

22.    Hear any other matter not inconsistent with the Bankruptcy Code; and

23.    Enter an order closing the Chapter 11 Case.

## ARTICLE XIII

## GENERAL PROVISIONS

13.01    <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

13.02    <u>Additional Documents</u>. On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Debtor, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.03    <u>Reservation of Rights</u>. Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights with respect to any Claims or Interests.

13.04    <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.05    <u>Severability</u>. If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or

unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtor's option, remain in full force and effect and not be deemed affected. However, the Debtor reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.06   <u>Votes Solicited in Good Faith</u>. Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of its Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals nor the Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

13.07   <u>Waiver and Estoppel</u>. Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

13.8   <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above.

Dated:  March 6, 2025                         1550 Bedford Ave LLC

By:  *Mordy Steinfeld*
        Name:  Mordy Steinfeld
        Its:  Authorized Officer