# BID PROCEDURES

The following Bid Procedures shall govern the auction process for the sale of, collectively, the land, buildings and improvements located at (i) 1550 Bedford Avenue Brooklyn, New York, (the "Real Property") pursuant to the Plan of Liquidation (as the same may be amended or modified, the "Plan") filed by 1550 Bedford Ave LLC (the "Debtor") in the Chapter 11 case of 1550 Bedford Ave LLC (the "Debtor"), Case No. 24-45433 (ess) (the "Bankruptcy Case"), pending before the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court"), and the Bankruptcy Court's Order dated _____, 2025 authorizing the Auction of the Real Property, pursuant to higher or better Qualified Bids received by the Debtor, in furtherance of the Plan and related relief, and any other orders issued by the Bankruptcy Court regarding the sale of the Real Property or the Plan.

1. **Stalking Horse Bidder Contract**. DCP Bedford Graham LLC (the "Lender") has entered into an Asset Purchase Agreement (the "Agreement") annexed as Exhibit "1" pursuant to which it will acquire the Real Property for $10,000,000 if the Debtor determines that there are no other Qualified Bidders. The Lender is authorized to assign the agreement to a third party (an "Assignee") up until April 23, 2025. As reflected in and subject to the the terms of Exhibit 1, in the event of an assignment of the Agreement, the Assignee will be entitled to a $250,000 fee (the "Breakup Fee") if it ultimately is not the Successful Bidder.

1. **Determination of "Qualified Bidder" Status**. Any potential bidder who wishes to participate in the Auction (as hereinafter defined) and to bid to acquire the Real Property must be a "Qualified Bidder". A Qualified Bidder is: (i) DCP Bedford Graham, LLC, or its assignee, as credit bidder up to the amount of $14,000,000.00, and (ii) a potential bidder who, *on or before April 29, 2025 at 5:00 p.m. (Eastern Time)* (the "Qualified Bidder Deadline"), delivers, so as to be actually received by (x) counsel to the Debtor, Law Offices of Isaac Nutovic, Attn: Isaac Nutovic; inutovic@nutovic.com; (y) counsel to DCP Bedford Graham LLC, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, Attn: William Heuer; wheuer@westermanllp.com; and (z) Avison Young-New York LLC (the "Real Estate Broker"), Attn: Patrick Madigan; patrick.madigan@avisonyoung.com; a written submission (the "Bid Package") that:

(a) fully discloses the identity of the person or entity that will be bidding for the Real Property (the "Bidder") or otherwise participating in connection with such bid on behalf of the Bidder, and the terms of any such participation;

(b) states that the Bidder is financially able and interested in acquiring the Real Property for a cash price of not less than $10,100,000.00 or $10,350,000 if the Agreement has been assigned to an Assignee (which sum shall be at least $100,000 above the Opening Bid and any applicable Breakup Fee), without contingencies as to financing and/or additional due diligence (it being understood, however, that the Bidder, while bound to its bid, shall not be deemed to have made an offer to acquire the Real Property binding upon the Debtor prior to the time that the Auction, as hereinafter defined, is conducted and the Sale approved by the Bankruptcy Court);

(c) is accompanied by financial information which fairly and reasonably demonstrates the Bidder's ability (and the sources of the Bidder's ability) to close on its purchase of the Real Property if the Bidder submits the Successful Bid (defined below) and becomes the Successful Bidder (as hereinafter defined), in an amount at least as much as its bid;

(d) is accompanied by evidence that a good faith deposit in the amount of 5% of the Bidder's Bid (the "Deposit") in immediately available funds has been made (or is concurrently being made) by wire transfer to the Debtor, pursuant to wire instructions to be provided by the Debtor, and agreeing that the Deposit shall be held by the Debtor in a non-interest bearing, segregated, sub-account of the primary account the Debtor maintains for the Debtor's estate in accordance with the terms hereof;

(e) agrees in writing that if the Bidder is the Successful Bidder, it shall, within three (3) Business Days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of its final bid at the Auction, with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT**;

(f) agrees in writing to close on the purchase of the Real Property if the Qualified Bidder's bid at the Auction is selected as the Successful Bid (as hereinafter defined), no later than ninety (90) days after the date the Auction is held or thirty (30) days from the entry of a Bankruptcy Court order approving the Sale, which ever is later, or on such other date as the Debtor and the Successful Bidder shall otherwise agree to in writing, or may otherwise be directed by Bankruptcy Court order, (such date, the "Closing Date"), with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**;

(g) agrees in writing that if such Bidder is determined by the Debtor, after consultation with DCP Bedford Graham LLC, to have submitted the second highest or best bid at the Auction (the "Back-up Bid") and, therefore, to be designated the back-up bidder (the "Back-up Bidder"), and is notified in writing that the Debtor has determined to proceed with the Back-up Bid after default by the Successful Bidder, to close on the purchase of the Real Property on the Back-up Closing Date (as hereinafter defined), with **TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING;**

(h) agrees in writing that if such Bidder (i) is the Successful Bidder, that the Deposit shall become non-refundable if the Bidder's bid at the Auction is selected as the Successful Bid and shall be forfeited by such Successful Bidder as liquidated damages if the Successful Bidder shall fail to close the purchase for any reason whatsoever on the Closing Date (other than for failure of the Debtor to execute and deliver the Deed and related documents; and (ii) is the Back-up Bidder and the Debtor, after consultation with DCP Bedford Graham LLC, determines to proceed with the Back-up Bid after default by the Successful Bidder, that the Deposit shall become

non-refundable and shall be forfeited by such Back-up Bidder as liquidated damages if the Back-up Bidder shall fail to close the purchase for any reason whatsoever on the Back-up Closing Date (other than for failure of Debtor to execute and deliver the Deed and related documents; and

(i)     agrees to these Auction Sale Procedures by signing and delivering an executed original of this document at or prior to the commencement of the Auction to counsel to the Debtor and counsel for DCP Bedford Graham LLC; and

(j)     attaches an executed contract to purchase the Real Property substantially in the form annexed hereto as Exhibit "1", marked to show proposed changes.

2.    **The Opening Bid**.  DCP Bedford Graham LLC or any Assignee succeeding to its rights prior to April 24, 2025 (the "Stalking Horse Bidder") with a Bid of $10,000,000 (the "Opening Bid") is deemed a Qualified Bidder and shall be deemed to have submitted the Opening Bid with the right to submit additional Bids.

3.    **Auction.** If the Debtor, after consultation with DCP Bedford Graham LLC, determines that there are no submissions by Qualified Bidders other than the Stalking Horse Bidder by the Qualified Bidder Deadline, then the Stalking Horse Bidder shall be determined to be the Successful Bidder pursuant to its Opening Bid.  In the event that the Debtor receives by the Qualified Bidder Deadline one or more submissions that the Debtor determines to be from Qualified Bidders, then the Debtor, in consultation with DCP Bedford Graham LLC, and the Real Estate Broker shall conduct an auction with respect to the Real Property (the "Auction") on **April 8, 2025 at 11:00 a.m. (Eastern Time) at the Law Offices of Isaac Nutovic, or such other location determined by the Debtor**.  The Auction shall be live and in person, but the Debtor may authorize online participation of Qualified Bidders in its discretion.  The Auction shall be governed by the following procedures:

(a)    Only the Real Estate Broker, Debtor, DCP Bedford Graham LLC and Qualified Bidders, and their respective counsel, agents and designated representatives may participate at the Auction, and only such parties, any brokers or auctioneers appointed by Order of the Bankruptcy Court in the Bankruptcy Case and a stenographer may be present throughout the Auction;

(b)    Only the Stalking Horse Bidder and Qualified Bidders shall be entitled to make any subsequent and additional bids at the Auction;

(c)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(d)    Except as otherwise authorized by the Debtor in its sole discretion, but after consultation with DCP Bedford Graham and the Real Estate Broker, Qualified Bidders shall participate in person or

       through a duly authorized representative at the Auction; the Stalking Horse Bidder may participate in the Auction in person, by telephone or through counsel present at the Auction;

(e)    The Stalking Horse Bidder is deemed to have made an initial Opening Bid of $10,000,000 (the "Stalking Horse Bid");

(f)    The first Bid over the Opening Bid shall be no less than $10,100,000 if DCP Bedford Graham LLC is the Stalking Horse Bidder or $10,350,000 if the Assignee is the Stalking Horse Bidder. Qualified Bidders may thereafter make successive bids in increments of at least $50,000 (the "Bid Increments") higher than the previous bid (or such other amount as may be agreed to by the Debtor after consultation with the Real Estate Broker) unless and until the bidding reaches $12,000,000, at which point successive bids in increments of at least $25,000 (or such other amount as my be agreed to by the Debtor after consultation with the Real Estate Broker) will be accepted;

(g)    The Auction shall continue until such time as it appears to the Debtor and DCP Bedford Graham LLC in their reasonable discretion that none of the Qualified Bidders is prepared to advance the Auction and there is only one offer that the Debtor, after consultation with DCP Bedford Graham LLC, determines is the highest or best offer submitted at the Auction from among the Qualified Bidders (the "Successful Bid" and the Qualified Bidder that submitted the Successful Bid, the "Successful Bidder"). The Debtor shall give fair warning of the closing of the bidding.

(h)    If more than one Qualified Bidder submits a bid in excess of the Opening Bid, after selection of the Successful Bidder, then the Debtor, after consultation with DCP Bedford Graham LLC, shall determine which Qualified Bid constitutes the Back-up Bid;

(i)    In considering bids submitted by Qualified Bidders at the Auction, the Debtor or DCP Bedford Graham LLC may request that Qualified Bidders provide for review by the Debtor at the Auction financial information which fairly and reasonably demonstrates the Bidder's ability (and the sources of the Bidder's ability) to close on its purchase of the Real Property if the Bidder should be the Successful Bidder based upon the bids submitted at the Auction;

(j)    Deposits submitted by Qualified Bidders who do not become the Successful Bidder or Back-up Bidder shall be returned by the Debtor to such Qualified Bidders within three (3) Business Days

after the Auction, except as otherwise provided herein;

(k) Bids at the Auction must be all cash, without financing or other contingencies; and

(l) Bids at the Auction must be able to close on the sale of the Real Property no later than ninety (90) days after the Auction or thirty (30) days after entry of a Bankruptcy Court order approving the sale of the Real Property, whichever is later.

4. **Obligation to Close and Default**. (a) The Successful Bidder (or, upon consent granted by the Debtor, after consultation with DCP Bedford Graham LLC, in writing at or prior to the Closing, an assignee of the Successful Bidder) shall close on the purchase of the Real Property and pay the amount of the Successful Bid, less its Deposit previously posted, on the Closing Date, with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**. The Successful Bidder shall be obligated to close title to the Real Property and there is no contingency of any kind or nature that will permit the Successful Bidder not to proceed at the Closing other than the inability of the Debtor to deliver title to the Real Property. In the event the Successful Bidder shall fail to timely close the purchase of the Real Property, the Successful Bidder shall be in default and the Successful Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Debtor, with the written consent of DCP Bedford Graham LLC, shall have the right, but not the obligation, to extend the time for Closing by the Successful Bidder up to an additional ten (10) Business Days (the "Adjourned Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Successful Bidder's obligation to close during such Adjourned Closing Period; and in such event, if the Successful Bidder shall fail to close the purchase of the Real Property prior to expiration of the Adjourned Closing Period, the Successful Bidder shall be in default and the Successful Bidder shall forfeit its Deposit.

(b) If for any reason the Successful Bidder shall fail to timely close the sale of the Real Property and the Debtor, after consultation with DCP Bedford Graham LLC, determines to proceed with the Back-up Bid, the Back-up Bidder (or, upon consent granted by the Debtor, after consultation with DCP Bedford Graham LLC, in writing at or prior to the Back-up Closing Date, an assignee of the Back-up Bidder) shall close on the purchase of the Real Property and pay the amount of the Back-up Bid, less its Deposit previously posted, on the later of (i) the Closing Date, and (ii) twenty (20) Business Days after written notice of the Successful Bidder's default in closing (the "Back-up Closing Date"), with **TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**. If the Debtor proceeds with the Back-up Bid then the Back-up Bidder shall be obligated to close title to the Real Property and there shall be no contingency of any kind or nature that will permit the Back-up Bidder not to proceed on the Back-up Closing Date other than the inability of the Debtor to deliver title to the Real Property. In the event the Back-up Bidder shall be obliged, but shall fail, to timely close the purchase of the Real Property, the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit.

Notwithstanding the foregoing, the Debtor, with the written consent of DCP Bedford Graham LLC, shall have the right, but not the obligation, to extend the time for Closing by the Back-up Bidder up to an additional ten (10) Business Days (the "Adjourned Back-up Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Back-up Bidder's obligation to close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder shall fail to close the purchase of the Real Property prior to expiration of the Adjourned Back-up Closing Period, the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit.

5. **Deposits of Successful Bidder and Back-up Bidder**.  (a) The Deposit submitted by the Successful Bidder shall be held in escrow by the Debtor in a non-interest bearing, segregated sub-account of the primary account which the Debtor maintains for the Debtor's estate until the Closing.  The Successful Bidder's Deposit shall be applied to the sale price or as otherwise provided for in the Plan upon the closing of the sale, unless the Successful Bidder shall default and fail to close and forfeit its Deposit.

(b)    The Deposit submitted by the Back-up Bidder shall be held by the Debtor in a non-interest bearing, segregated sub-account of the primary account which the Debtor maintains for the Debtor's estate until the Closing.  If the Closing does not take place within sixty (60) Calendar Days after the Auction, upon application to the Court and upon cause shown, to the extent required by the Court the Back-up Bidder Deposit shall be returned.  However, if the Successful Bidder fails to close and the Debtor decides, after consultation with DCP Bedford Graham LLC, to proceed with the Back-up Bid, then the Back-up Bidder's Deposit shall continue to be held by the Debtor and shall be applied to the sale price or as otherwise provided for in the Plan upon the closing of the sale on the Back-up Closing Date, unless the Back-up Bidder shall default and fail to close and forfeit its Deposit, which shall be remitted to the Debtor's estate.

6. **Due Diligence**.  Each Bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid.

7. **Reservation of Rights**.  In the interest of maximizing the results realized through the Auction, the Debtor, after consultation with DCP Bedford Graham LLC, reserves the right to: (a) modify any of the deadlines set forth in these Bid Procedures; (b) modify or waive, at or prior to the close of the Auction, the procedures and terms and conditions regarding the sale of the Real Property; and/or (c) adjourn the Auction and/or Closing.  Anything to the contrary contained in these Bid Procedures notwithstanding, the Debtor, upon the written consent of DCP Bedford Graham LLC, shall have the right, to adjourn the Closing Date or the Back-up Closing Date to remedy any defect to title of the Real Property.

8. **Additional Terms, Conditions and Procedures**.

(a)    If the Debtor is unable to deliver title to the Real Property in accordance with these Auction Sale Procedures or the Plan for any reason whatsoever, the prospective purchaser will have no recourse against the Debtor, the Debtor, the post- confirmation Debtor, the DCP Bedford Graham LLC, their respective counsel or any broker or auctioneer that may be retained by Order of the Bankruptcy Court; *provided, however*, that a Qualified Bidder in this circumstances shall be entitled to a return of its Deposit.

(b) By participating in the Auction, all Bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes relating to the Real Property or the Bankruptcy Case. Any disputes concerning the sale of the Real Property shall be determined by the Bankruptcy Court which shall retain sole and exclusive jurisdiction over all matters relating to the Real Property, the Plan and the sale contemplated by these Auction Sale Procedures.

(g) The Sale is subject to final approval by the Bankruptcy Court at a hearing to be held on **May 8, 2025 at 12:30 p.m.** (Eastern Time) (or as soon thereafter as practicable)**,** before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York, 270 Cadman Plaza East, Courtroom 3585, Brooklyn, New York.

THE UNDERSIGNED BIDDER HEREBY CONSENTS TO AND AGREES TO BE BOUND BY THE FOREGOING AUCTION SALE PROCEDURES:

Print Name of Bidder

Print Name and Title of Authorized
Representative of Bidder

Signature of Authorized Representative

Date: